UNITED STATES of America,
Plaintiff-Appellee,

v.

James L. LOVE, Defendant-Appellant.

No. 78–5288.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 20, 1979.

Decided April 25, 1979.

82

Stanley Fink, Cassell & Fink, Memphis, Tenn., for defendant-appellant.

W. J. Michael Cody, U. S. Atty., Maurice E. Franklin, Memphis, Tenn., for plaintiff-appellee.

Before CELEBREZZE and LIVELY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

LIVELY, Circuit Judge.

This appeal presents a double jeopardy claim in an unusual factual setting. After granting a motion for acquittal on one count (Count 2) of an indictment, the district court submitted to the jury the remaining charge (Count 3) of receipt and possession of a firearm by one previously convicted of a felony. 18 U.S.C. § 922(h)(1). Count 1 had previously been severed and continued on motion of the defendant. After approximately three hours of deliberation the jury announced that they were unable to agree. The district court then gave a modified "Allen charge." See *Devitt & Blackmar, Federal Jury Practice and Instructions* § 18.14 (3d ed. 1977). Though the defendant contends that the district court's supplemental charge was too strong, that is not the basis of this appeal.

Somewhat later the jury returned to the courtroom and the foreman announced, ".   .   . we have reached a verdict of not guilty." The court then proceeded to poll the jury on its own motion, telling the jurors, "Now, we expect your answer to be yes, but if for any reason it is no we expect you to speak up." Each juror was then asked if the verdict announced by the foreman was his verdict. The question to the eighth juror polled produced the following colloquy:

THE COURT: Mr. Anderson, was that your verdict?

JUROR ANDERSON: No, sir.

THE COURT: Uh-oh, you didn't vote for not guilty?

JUROR ANDERSON: I voted, but I still don't believe it. What it is, the reason I voted not guilty, the majority took over, see, and they say so, and I went on and agreed with them. But I still don't believe it.

THE COURT: I didn't hear what you said.

JUROR ANDERSON: What the person was charged with, I believe they are guilty, but they—most of them said not guilty, and they said I had to go along, so I voted not guilty.

After completing the poll of the remaining jurors, the district court again addressed juror Anderson with the following result:

THE COURT: All right, now, Mr. Anderson, did you hear the instructions I gave?

JUROR ANDERSON: I did.

THE COURT: To all the jury saying you must not give up your honest conviction, but if you are persuaded that you are wrong you may change?

JUROR ANDERSON: I was persuaded to vote not guilty, but wasn't persuaded I was wrong about my original verdict.

MR. MCTIGHE: (Prosecutor) Your Honor please, I don't think that's a unanimous verdict.

THE COURT: I agree, I don't think it is a unanimous verdict, and I will declare a mistrial in this case. We will have to try it again.

MR. FINK: (Defense counsel) Your Honor please, I will address myself outside of the presence of the jury.

THE COURT: All right, I'm going to excuse the jury. Sometimes this happens, and Mr. Anderson has very frankly indicated that he didn't agree with that verdict, and I don't think we ought to

receive that verdict in view of his statement. So I am going to declare a mistrial and the case will have to be tried over.

The defendant then moved the court to set aside the order of mistrial and reinstate the not guilty verdict. After this motion was denied, the government elected to retry the defendant on the same charge (Count 3) which had been the subject of the mistrial rather than the remaining charge (Count 1) which had been severed from the original indictment. The defendant then made a motion to dismiss Count 3 on grounds of double jeopardy. When this motion was denied the defendant perfected the present appeal.

I

█ It was suggested at oral argument that the appeal was premature since the defendant's case had not been called for trial a second time, and might never be. However, the parties had been notified by the clerk of court that the case was set for retrial and the motion to dismiss was filed at that time. This was the proper way to raise the double jeopardy defense and the order denying the motion was appealable. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); cf. *United States v. Jorn*, 400 U.S. 470, 477–78, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Also, contrary to the government's claim, the notice of appeal was filed within the time prescribed by Rule 4(b), Federal Rules of Appellate Procedure, and this court has jurisdiction of the appeal.

II

█ The first question for decision is whether it was error for the district court to poll the jury under the circumstances of this case. We have found no case in which a trial court polled a jury which had announced a not guilty verdict and then declared a mistrial upon determining that the verdict was not unanimous. Rule 31, Fed-

eral Rules of Criminal Procedure [1] seems to permit the procedure followed in this case since it makes no distinction between guilty and not guilty verdicts. The defendant has not challenged the propriety of the district court's action in polling the jury on its own motion after a not guilty verdict had been announced. Nevertheless, since substantial rights were affected by the district court's action, we explore this question under the plain error provisions of Rule 52(b), Federal Rules of Criminal Procedure.[2]

### A.

This court has held that the requirement of a unanimous verdict in criminal cases is for the benefit of the defendant. In an eloquent opinion holding that a defendant in a criminal case may not waive the requirement that a verdict be unanimous, Chief Judge Charles C. Simons wrote that it is a basic tenet of due process that the presumption of innocence not be overturned except by a unanimous verdict. *Hibdon v. United States*, 204 F.2d 834 (6th Cir. 1953). Further, in discussing the fact that a trial judge may direct an acquittal but may never direct a verdict of guilty no matter how overwhelming the evidence may be, the Supreme Court stated in *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977):

> The trial judge is thereby barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused.

In the same opinion Justice Brennan quoted from *United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), as follows:

Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that "[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy and thereby violating the Constitution." 430 U.S. at 571, 97 S.Ct. at 1354.

Thus if the announcement of the verdict by the foreman was the final verdict of the jury it would be a violation of the Constitution to require the defendant to endure another trial on Count 3.

■ However, the very existence of Rule 31(d) which provides for polling a jury after its verdict has been returned but before it is recorded compels the conclusion that a verdict is not final when announced. This conclusion is also implicit in opinions which have explained the purpose of permitting juries to be polled. *See e. g., United States v. Edwards*, 469 F.2d 1362, 1366 (5th Cir. 1972):

> The object of a poll is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and parties "to ascertain for a certainty that each of the jurors approves of the verdict as returned." *Humphries v. District of Columbia*, 174 U.S. 190, 194, 19 S.Ct. 637, 638–639, 43 L.Ed.2d 944 (1899);

and *Miranda v. United States*, 255 F.2d 9, 18 (1st Cir. 1958):

> For the right to poll the jury is the right to require each juror individually to state publicly his assent to or dissent from the returned verdict which has been announced in open court in his presence.

---

1. In pertinent part, Rule 31 provides as follows:

   **Rule 31.**
   **VERDICT**
   (a) **Return.** The verdict shall be unanimous. It shall be returned by the jury to the judge in open court.

   \* \* \* \* \* \*

   (d) **Poll of Jury.** When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll

there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

\* \* \* \* \* \*

2. **Rule 52.**

   \* \* \* \* \* \*

   (b) **Plain Error.** Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

It thus appears that the purpose of the jury poll is to make certain that one of the prerequisites of a valid verdict—unanimity—has been achieved. The Fifth Circuit has held that "a jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered." A footnote states, "Even at this point, where the verdict is announced to the court and no dissent is voiced, the verdict may not be accepted by the court if a poll taken before the verdict is recorded indicates lack of unanimity." *United States v. Taylor,* 507 F.2d 166, 168 (5th Cir. 1975) (citations omitted). This holding reflects a generally accepted position with respect to finality of verdicts. See 5A *J. Moore, Fed. Prac.* § 49.07 at 2237 n. 1 (2d ed. 1977) (civil verdicts not final until announced, received by court and recorded by clerk). Since the verdict as announced was not final we conclude that the district court did not deprive the defendant of the benefit of a valid not guilty verdict in polling the jury.

### B.

The defendant does question the propriety of the act of polling the jury for a different reason, contending that the poll conducted by the district court resulted in an impeachment of the verdict. However, there is a difference between impeaching a valid verdict and correcting an announced verdict which does not reflect the true action of the jury. See *Young v. United States,* 163 F.2d 187, 189 (6th Cir.), *cert. denied,* 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355 (1947) and 334 U.S. 859, 68 S.Ct. 1533, 92 L.Ed. 1779 (1948). Numerous cases have approved the practice of permitting a jury to correct a mistake in its announced verdict before it has been accepted and the jury discharged. See *United States v. Henson,* 365 F.2d 282, 284 (6th Cir.), *cert. denied,* 385 U.S. 974, 87 S.Ct. 513, 17 L.Ed.2d 437 (1966); *Slocum v. United States,* 325 F.2d 465 (8th Cir. 1963); *Helms v. United States,* 310 F.2d 236 (5th Cir. 1962); *Shiflett v. Welch,* 161 F.2d 933 (4th Cir.), *cert. denied,* 332 U.S. 777, 68 S.Ct. 41, 92 L.Ed. 362 (1947). In a habeas corpus action the First Circuit held that a defendant in a state criminal case was not exposed to double jeopardy or denied a jury trial when the jury was permitted to change its announced verdict of not guilty to not guilty of one charge, but guilty of a second one. *Brown v. Gunter,* 562 F.2d 122 (1st Cir. 1977).

### III

Having determined that one juror had never agreed with the verdict (though he had assented to it in the jury room), the district court had the discretion under Rule 31(d), *supra,* either to discharge the jury or return it for further deliberations. Though the defendant objected to the discharge of the jury, he did not request that it be required to deliberate further. Instead, he requested that the verdict be reinstated. Thus the question for decision is not whether the district court chose the wrong course under Rule 31(d), but whether the circumstances which brought about the mistrial were such as to preclude a second trial on Count 3.

The Supreme Court recently addressed this issue in the following language:

The fountainhead decision construing the Double Jeopardy Clause in the context of a declaration of a mistrial over a defendant's objection is *United States v. Perez,* 9 Wheat. 579, [6 L.Ed. 165] (1824). Mr. Justice Story, writing for a unanimous Court, set forth the standards for determining whether a retrial, following a declaration of a mistrial over a defendant's objection, constitutes double jeopardy within the meaning of the Fifth Amendment. In holding that the failure of the jury to agree on a verdict of either acquittal or conviction did not bar retrial of the defendant, Mr. Justice Story wrote:

"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and

it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." *Id.*, at 580.

*Illinois v. Somerville*, 410 U.S. 458, 461, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973).

■■■■ The rule that a retrial is permitted only if there was manifest necessity for declaring a mistrial or the ends of public justice would otherwise be defeated has been followed consistently by the Supreme Court. See, *e. g., Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *United States v. Jorn*, 400 U.S. 470, 480–81, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Wade v. Hunter*, 336 U.S. 684, 689–90, 69 S.Ct. 834, 93 L.Ed. 974 (1949). The same standard has recently been applied by this court in *United States v. Larry*, 536 F.2d 1149, *cert. denied*, 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976), and *United States v. Johnson*, 584 F.2d 148 (6th Cir. 1978). Thus it may not now be argued that the double jeopardy provision requires that every time a criminal trial ends in something less than a final judgment the defendant is entitled to an acquittal and protection from retrial. The defendant's "valued right" to have his trial completed by the jury first chosen to hear the case must give way in some instances to " 'the public's interest in fair trials designed to end in just judgments.' " *Illinois v. Somerville*, 410 U.S. at 470, 93 S.Ct. at 1073; *Wade v. Hunter*, 336 U.S. at 688–89. As Justice Black wrote for the Court in *Wade v. Hunter, supra*, 336 U.S. at 689, 69 S.Ct. at 837,

In such event [failure of the jury to agree] the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.

■■■■ There can be no retrial when bad faith conduct by either the trial judge or the prosecutor is responsible for the mistrial. The Double Jeopardy Clause protects a defendant from harassment by successive prosecutions and from being required to forego trial before the original tribunal in order to give the prosecution a better chance to convict. *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *United States v. Crouch*, 566 F.2d 1311 (5th Cir. 1978); *United States v. Wilson*, 534 F.2d 76, 80–81 (6th Cir. 1976). There is no claim of prosecutorial or judicial overreaching in this case. However, it is the contention of the defendant that juror Anderson's indecision was brought about by his attempt to comply with that portion of the "Allen charge" which instructs the jurors to consult with one another with a view to reaching agreement and to not hesitate to re-examine their views and change their minds. Here the jury had already reported a deadlock and if the court had not given its supplemental instruction the jury would likely have been discharged for inability to agree. If this had occurred a manifest necessity would have existed for declaring a mistrial and there would be no question of the government's right to retry the defendant. Thus Love's position was not worsened by an attempt to break a deadlock which ultimately failed.

■■■■ We believe the district court responded to "manifest necessity" in declaring the mistrial. Under all the circumstances, where a juror had voted one way in the jury room and expressed a contrary belief with respect to guilt in open court, it is unlikely that a unanimous verdict would have been reached upon further deliberation. At least one court has found error in requiring further deliberations under somewhat similar circumstances. See *United States v. Sexton*, 456 F.2d 961, 967 (5th Cir. 1972).

In the present case the jury had failed to reach a verdict after lengthy deliberations. After further instructions, though it first appeared that a unanimous verdict had been reached, the poll revealed the fact that one juror did not agree with the verdict as announced. The experienced and able trial judge then exercised his discretion and declared a mistrial. This unforeseeable circumstance was not brought about by any act of the court or counsel. Though the defendant suffered the anguish of seeing his apparent acquittal vanish as a result of the jury poll, we believe "the public's interest in fair trials designed to end in just judgments," *Wade v. Hunter*, 336 U.S. at 688–89, 69 S.Ct. at 837, justified the declaration of a mistrial. Therefore, the Double Jeopardy Clause will not be violated by a retrial on Count 3.

The judgment of the district court is affirmed.