# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00584-CR

**Ex parte Jesus Aviles, Appellant**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. 002294, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING

&

## NO. 03-01-00547-CV

**In re Jesus Aviles**

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

Jesus Aviles filed an application for writ of habeas corpus and plea in bar seeking to prevent the State from trying him on an indictment alleging intoxication assault and aggravated assault. The writ issued and after a hearing, the relief sought was denied. Aviles appeals from the order denying relief. In a related action, Aviles asks this Court to issue a writ of mandamus ordering the district court to issue a written judgment of conviction for driving while intoxicated (DWI) based on a jury verdict at a previous trial convicting him of that offense. We will reverse the court=s order denying relief in the habeas corpus proceeding and conditionally grant the writ of mandamus.

# BACKGROUND

Aviles was originally indicted for intoxication assault stemming from an automobile collision in which an Austin police officer was seriously injured (cause number 002294). In a second indictment (cause number 005714), the State added the charge of aggravated assault. Aviles was ultimately tried on a third indictment (cause number 9014041) that, like the second indictment, charged both intoxication assault and aggravated assault. The third indictment did not materially differ from the first two indictments in terms of the offenses charged and it is undisputed that all three indictments were based on the same criminal transaction.[1] The jury deliberated for several hours before returning a verdict acquitting Aviles of the assault charges, but finding him guilty of the lesser included offense of DWI. The trial court accepted the verdict and discharged the jury. The court then assessed punishment at 180 days= confinement in the county jail and imposed sentence in open court.

---

[1]     The third indictment added an allegation that defendant failed to yield the right of way.

The State later learned that the verdict was not unanimous on the assault charges and filed a motion to inquire into the validity of the verdict under Rule 606(b) of the Texas Rules of Evidence.[2] After a hearing, the court overruled the motion.[3] The State then obtained a trial setting for the second of the two original indictments (cause number 005714). Aviles then initiated the habeas corpus and mandamus proceedings now before us.

At the habeas corpus hearing, Aviles argued that his DWI conviction in cause number 9014041 constituted an acquittal of the charged greater offenses, and that double jeopardy principles barred further prosecution for either intoxication assault or aggravated assault. In response, the State called several jurors to testify that the jury, acting on the advice of the court bailiff, erroneously concluded that it was not necessary to reach a unanimous verdict of "guilty" or "not guilty" on each offense charged against Aviles before proceeding to the next charge. The foreperson testified that the jury was split 9-3 and 10-2 (guilty/not guilty) on the aggravated assault and intoxication assault charges, respectively. She then filled out

---

[2] Rule 606(b) provides:

**Inquiry Into Validity of Verdict or Indictment**. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. . . . However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror . . . .

Tex. R. Evid. 606(b).

[3] The trial court concluded that there was no authority for the State's motion because a 606(b) inquiry is made in the context of a motion for new trial, a motion the State cannot make. *See* Tex. R. Evid. 606(b); Tex. R. App. P. 21.1.

3

and signed the verdict form, checking Anot guilty@ on the first two counts and Aguilty@ on the DWI count. However, because she was uncertain about the bailiff=s advice, she noted the vote tallies, i.e., A9-3@ and A10-2@, on the first two counts in the right margin of the verdict form so that the judge would see it and Aperhaps comment on it.@ The jury then returned to the courtroom to deliver the verdict:

COURT: All right. Let the record reflect that the attorney for the state, attorney for the defendant, the defendant and all the members of the jury are present and seated in the courtroom. Who is the presiding juror or foreperson? Is that you? All right. Have you reached a verdict in this case?

[FOREPERSON]: Yes, we have.

COURT: Would you deliver the verdict form to the bailiff so that he can hand it to me. All right. Let me ask the foreperson: Is this verdict the unanimous verdict of all members of the jury?

[FOREPERSON]: Yes, it is, your Honor.

COURT: All right. Thank you. Cause No. 90-14041, the State of Texas versus Jesus Aviles. Verdict of the jury.

Part A: We the jury find the defendant, Jesus Aviles not guilty of the offense of aggravated assault as alleged in the indictment and it=s signed by the foreperson of the jury.

Part B: We the jury find the defendant, Jesus Aviles not guilty of the offense of intoxication assault as alleged in the indictment.

Paragraph C: We the jury find the defendant, Jesus Aviles guilty of the offense of driving while intoxicated and it=s signed by the foreperson of the jury.

That is the unanimous verdict of all 12; is that correct?

4

[FOREPERSON]: Guilty verdict is B I mean the not guilty.

COURT: Would you say that again please, ma=am?

[FOREPERSON]: The guilty of DWI was unanimous. The other two were not.

COURT: All right. Thank you. All right.

While this exchange was taking place, there was a commotion in the courtroom as the victim=s family reacted to the verdict. In his findings of fact in the habeas proceeding, the trial judge stated that because of the commotion neither he nor the prosecutors were able to hear the foreperson=s remarks regarding the jurors= lack of unanimity. Before the foreperson was finished reading the verdict, the State=s lead counsel left the courtroom to comfort the victim=s family. The jury was not polled. The judge then discharged the jury, assessed punishment, and imposed sentence. To date the judge has not signed a written judgment in cause number 9014041.

After the hearing, the court denied the requested habeas corpus relief and plea in bar and set aside the verdict in cause number 9014041. The court subsequently filed findings of fact and conclusions of law.[4]

On appeal, Aviles claims that the double jeopardy clause of the United States Constitution bars the State from retrying him in cause numbers 002294 and 005714. He also seeks a writ of mandamus

---

[4] The conclusions of law state, among other things, that the bailiff exerted an improper outside influence on the jury under 606(b) which rendered the verdict void; that the court was without authority to accept the void verdict; that the verdict was not a valid acquittal; and that the jury had not reached a unanimous decision on the intoxication assault and aggravated assault charges.

ordering the trial court to issue a written judgment in cause number 901404 finding him not guilty of the

assault charges and guilty of DWI.

## DISCUSSION

The Fifth Amendment guarantee against double jeopardy protects against a second

prosecution for the same offense following conviction or acquittal and against multiple punishments for the

same offense. *See* U.S. Const. amend. V; *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Cervantes v.*

*State*, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991).[5] That a verdict of acquittal may not be reviewed

without placing the defendant twice in jeopardy has been described as the most Afundamental rule in double

jeopardy jurisprudence.@ *Sanabria v. United States*, 437 U.S. 54, 64 (1978). This holds true even

where a verdict of acquittal is based on an Aegregiously erroneous foundation.@ *Fong Foo v. United*

*States*, 369 U.S. 141, 143 (1962) (per curiam); *see also United States v. Martin Linen Supply Co.*, 430

U.S. 564, 571 (1977). In addition, the Texas Code of Criminal Procedure bars retrial of a defendant after

---

[5] The doctrine of double jeopardy is applied to the states through the Fourteenth Amendment. *See Ex parte Preston*, 833 S.W.2d 515, 517 (Tex. Crim. App. 1992).

6

an acquittal, Ahowever irregular the proceedings may have been.@ Tex. Code Crim. Proc. Ann. art. 1.11

(West 1977).[6]

---

[6] Article 1.11 provides:

> An acquittal of the defendant exempts him from a second trial or a second prosecution
> for the same offense, however irregular the proceedings may have been; but if the
> defendant shall have been acquitted upon trial in a court having no jurisdiction of the
> offense, he may be prosecuted again in a court having jurisdiction.

Tex. Crim. Code Proc. Ann. art. 1.11 (West 1977).

The State conceded at Aviles=s habeas corpus hearing that the first and second indictments are fundamentally the same as the third indictment for which Aviles was tried and acquitted. As such, retrial would ordinarily be barred by double jeopardy. *See Sanabria*, 437 U.S. at 64.[7] Instead, the State contends retrial is permissible because the jury returned an invalid verdict which the court was not authorized to accept and render judgment on. We agree that the verdict the jury returned in this case was erroneous. *See* Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2002) (requiring a unanimous verdict by twelve jurors in felony cases). However, we conclude that the critical question in terms of the double jeopardy prohibition against multiple prosecutions is whether the court=s action in accepting the verdict, discharging the jury, and imposing sentence effectively brought an end to Aviles=s trial. We conclude that it did.

The concept of finality is inherent in the policy concerns that animate the double jeopardy prohibition against multiple trials. *See United States v. Jorn*, 400 U.S. 470, 479 (1971) (prohibition against double jeopardy Arepresents a constitutional policy of finality for the defendant=s benefit in federal criminal proceedings@). With few exceptions, the State may not make repeated attempts to convict the accused Athereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty.@ *Green v. United States*, 355 U.S. 184, 187-88 (1957). Society=s awareness of the personal strain that a criminal trial places on the individual defendant is Amanifested in a willingness to limit

---

[7] There is no dispute that jeopardy has attached in this case. *See Crist v. Bretz*, 437 U.S. 28, 35 (1978); *Ex parte Preston*, 833 S.W.2d 515, 517 (Tex. Crim. App. 1992). The State also stipulated that Aviles was in custody under the former indictments.

the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws.@ *Jorn*, 400 U.S. at 479.

While we are unaware of a Texas case that addresses finality in this exact context, the court of criminal appeals= recent decision in *Ex parte Madding*, 70 S.W.3d 131 (Tex. Crim. App. 2002), is instructive. In *Madding*, the trial court orally pronounced that the defendant=s sentences would run concurrently, but later issued a written judgment ordering that the sentences were to run consecutively. *Id.* at 133. The court of criminal appeals held that once sentence was pronounced in open court it could not be increased by a later written judgment, which is Amerely the written declaration and embodiment of that oral pronouncement.@ *Id.* at 135.

> [T]he imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence. . . . Once applicant was removed from the courtroom and began serving his sentence, it was *too late* to cumulate the sentence just imposed with an earlier one.

*Id*. at 135-36 (emphasis added). The court reasoned that to hold otherwise would violate the defendant=s right to due process by depriving him of adequate notice of his sentence. *Id*. at 136; *see also Jones v. State*, 795 S.W.2d 199, 201 (Tex. Crim. App. 1990) (ANo further ritual or special incantation from the bench is necessary to accomplish an adjudication of guilt beyond the pronouncement of sentence as required by law.@). Similarly, Aviles was adjudged guilty of DWI when the court accepted the verdict and imposed sentence in open court. The trial court cannot forestall this result by refusing to issue a written judgment. In a criminal proceeding, a written judgment is Amerely a record of events which have occurred in fact.@ *Jones*, 795 S.W.2d at 202; *Ex parte George*, 913 S.W.2d 523, 526 (Tex. Crim. App. 1995);

**9**

*see also* Tex. Code Crim. Proc. Ann. art. 42.01 (West Supp. 2002). A trial judge is required to immediately enter judgment upon receipt of the verdict. Tex. Code Crim. Proc. Ann. art. 37.12 (West 1981). Furthermore, a trial judge may not receive a jury verdict and refuse to abide by it. *Combes v. State*, 286 S.W.2d 949, 950 (Tex. Crim. App. 1956); *Hardy v. State*, 261 S.W.2d 172, 174 (Tex. Crim. App. 1953).

The State cites *United States v. Taylor*, 507 F.2d 166 (5th Cir. 1975), and *United States v. Love*, 597 F.2d 81 (6th Cir. 1979), in support of its argument that the trial court lacked the authority to accept an invalid verdict. However, both cases are distinguishable. In *Taylor*, a juror died before the verdict was signed or returned in open court. 507 F.2d at 167. After assembling the remaining jurors and determining that all twelve had agreed on a verdict before the juror=s death, the court then instructed the jurors to sign the verdict and return it to the court. *Id.* On appeal, the Fifth Circuit found that the votes taken in the jury room *before the verdict was returned* were merely preliminary, thus the verdict was invalid. *Id*. at 168-69. In reaching this conclusion, the Fifth Circuit held that Aa jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered.@ *Id*. at 168; *see also* Tex. Code Crim. Proc. Ann. art. 37.04 (West 1981).[8] In *Love*, the trial

---

[8]    Article 37.04 provides:

When the jury agrees upon a verdict, it shall be brought into the court by the proper officer; and if it states that it has agreed, the verdict shall be read aloud by the judge, the foreman, or the clerk. If in proper form and no juror dissents therefrom, and neither party requests a poll of the jury, the verdict shall be entered upon the minutes of the court.

Tex. Code Crim. Proc. Ann. art. 37.04 (West 1981).

**10**

court undertook a jury poll that revealed the jury=s lack of unanimity and declared a mistrial. 597 F.2d at 82-3. On appeal, the Sixth Circuit, in addressing whether the trial court could poll a jury which had returned a not guilty verdict, upheld the declaration of a mistrial on the basis that the jury poll revealed the invalid nature of the verdict. *Id*. at 87.

While the foreperson in the present case did indicate a lack of jury unanimity, neither *Love* nor *Taylor* addresses the precise situation here, where a jury has signed and returned an apparently valid verdict which is then accepted by the court. Unlike *Love*, the jury was not polled nor was a mistrial declared. Having accepted the verdict, imposed sentence in open court, and discharged the jury without declaring a mistrial, the court effectively put an end to Aviles=s trial. To hold as the State argues would destroy the concept of finality that attaches to criminal proceedings, paving the way for retrial of a criminal defendant years after a verdict of acquittal has been returned in a case.

As *Love* illustrates, the State could have easily avoided the result in this case by exercising its right to a jury poll after the verdict was read. *See* Tex. Code Crim. Proc. Ann. art. 37.05 (West 1981). The purpose of the jury poll is to ensure that Aone of the prerequisites of a valid verdict[,] unanimity[,] has been achieved.@ *Love*, 597 F.2d at 85. Had the State requested that the jury be polled, it would have discovered the jury=s nonunanimous verdict on the assault counts at a time when the problem could still be addressed. Presumably, the court would have then either declared a mistrial or sent the jury back for further deliberations. However, not only did the State fail to request a jury poll, but lead counsel for the State left the courtroom before the foreperson finished reading the verdicts.

**11**

We also find the court of criminal appeals= decision in *Ex parte George* instructive. 913 S.W.2d 523 (Tex. Crim. App. 1995). In *George*, the State refused to consent to the defendant=s waiver of his right to a jury trial. *Id*. at 525. Although the State=s consent to the jury waiver was required, the trial court nevertheless demanded that the State proceed to trial without a jury. *Id*. When the State refused, the court entered a judgment of acquittal. *Id*. The court of criminal appeals reversed on the basis that the trial court could not acquit the defendant because it lacked the authority to act as the fact finder in the case. *Id*. at 527.

In the present case, the court was authorized to accept the verdict. *See* Tex. Code Crim. Proc. Ann. art. 37.04 (West 1981). Although the foreperson=s statement regarding the lack of unanimity on the assault counts could be viewed as Adissent,@ her statement was not sufficiently clarified by the court or the State, although they had the means to do so. The unique facts of this case, that the verdict may have been erroneous, did not deprive the trial court of the authority to accept it. *Cf. Garcia v. Dial*, 596 S.W.2d 524, 528 (Tex Crim. App. 1980) (holding that district court=s jurisdiction in criminal trials includes power to make erroneous determinations in carrying out sentence or judgment of court into execution).

Finally, the informal verdict cases to which the State refers us are inapposite here. *See State ex rel. Hawthorn v. Giblin*, 589 S.W.2d 431 (Tex. Crim. App. 1979); *Cardona v. State*, 957 S.W.2d 674 (Tex. App.CWaco 1997, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 37.10 (West Supp. 2002). This was not a note from a still-deliberating jury seeking further guidance from the court, but a verdict, albeit erroneous, that was completed Aguilty@ or Anot guilty@ for each charge and signed by the

**12**

foreperson.[9] In this respect, the verdict, at least on its face, met the statutory definition of Averdict@ in the code of criminal procedure. Tex. Code. Crim. Proc. Ann. art. 37.01 (West 1981) (defining verdict as Awritten declaration by the jury of its decision of the issue submitted to it in the case@).[10]

Although the State conceded at oral argument that its case depends on whether the court was authorized to accept an invalid verdict, we will also address its other arguments.

The State additionally argues (1) that there was no formal acquittal in this case and (2) that the doctrine of manifest necessity, which applies to mistrials, applies here by analogy. We will address each argument in turn. The supreme court has held that an acquittal Amust represent a resolution, correct or not, of some or all of the factual elements of the offense charged.@ *Martin Linen*, 430 U.S. at 571. In the cases cited by the State, there was either no trial or only a partial trial, thus no factual resolution of the elements

---

[9] The trial judge apparently agreed that the verdict was at least facially valid, commenting at the hearing on the motion to inquire into the validity of the verdict: AIt looks to me like we have a verdict form that is in due order under the statute.@

[10] We also find unpersuasive the State=s argument that Aviles waived his right to assert double jeopardy by not objecting to the jury=s lack of unanimity at trial. *See Maula v. Freckleton*, 972 S.W.2d 27 (2d Cir. 1992). The failure to object at trial does not preclude the assertion of a double jeopardy violation that is clearly apparent on the face of the record. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

had been made. *See United States v. Appawoo*, 553 F.2d 1242, 1244-45 (10th Cir. 1977) (holding that government=s appeal of dismissal after partial trial did not violate double jeopardy clause; dismissal was not acquittal because based solely on constitutional grounds and did not resolve any factual elements of offense charged)*; George*, 913 S.W.2d at 527 (no acquittal in absence of resolution of issues by authorized fact finder); *Texas Dep=t of Pub. Safety v. Norrell*, 968 S.W.2d 16, 19 (Tex. App.CCorpus Christi 1998, no pet.) (holding that prosecutor=s decision not to file charges was not acquittal).

The State relies primarily on *George* to argue that there was no acquittal in the present case. However, in *George*, there was no trial, a fact the court of criminal appeals found dispositive. 913 S.W.2d at 527. More significantly, double jeopardy was not at issue because jeopardy had not attached. *Id*. at 525. Instead, the court focused solely on whether there was a valid acquittal that would prevent retrial of the defendant under article 1.11 of the code of criminal procedure. *Id*. at 526. In the present case, jeopardy had attached and there was a full trial on the merits, after which the jury resolved the factual elements of the offenses charged and delivered a verdict.

The State also argues that the doctrine of manifest necessity applies by analogy to the present case. A mistrial does not bar further proceedings if there was a manifest necessity for declaring one. *Ex parte Brown*, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995). The doctrine weighs the defendant=s interest to a trial by a particular jury against society=s interest in a just result. *Wade v. Hunter*, 336 U.S. 684, 688 (1949). The trial court did not declare a mistrial in this case. Even if it had, the doctrine of manifest necessity requires the court to first consider less drastic alternatives before declaring a mistrial. *Brown*, 907 S.W.2d at 839. Had the bailiff=s misconduct come to the attention of the judge, he would have

**14**

been obligated to consider such alternatives. It is at least plausible that after the jury deliberated for the several hours here, the judge may have considered sending the jurors back for further deliberations, with what possible results we can only speculate. The jury may have deadlocked, or returned a guilty verdict on one of the assault charges, or even not-guilty verdicts on the assault chargesCwe will never know. However, what the jury might have done is not the issue. We conclude that once the judge accepted the verdict and pronounced sentence in open court, the verdict was final. The court had the authority to accept the verdict and did so. The fact that the verdict apparently was erroneous cannot be addressed at this point; it is simply too late in the process. Therefore, we hold that double jeopardy bars reprosecution of Aviles in cause numbers 005714 and 002294 for the offenses of which he was acquitted in cause number 9014041. *See* Tex. Code Crim. Proc. Ann. art. 37.14 (West 1981) (conviction for lesser included offense bars retrial for greater offense).

### *Mandamus*

Aviles also seeks a writ of mandamus ordering the trial court to issue a written judgment in cause number 9014041. To establish entitlement to mandamus relief, Aviles must demonstrate that (1) the act sought to be compelled is purely ministerial and (2) that there is no adequate remedy at law. *Stotts v. Wisser*, 894 S.W.2d 366, 367 (Tex. Crim. App. 1995). Although the State argues otherwise, entry of a judgment is a ministerial act. *George*, 913 S.W.2d at 526. Judgment in a criminal case Amerely documents the fact of, and certain important events associated with, the process leading to conviction or acquittal.@ *Id.*

Thus, the question is whether Aviles has an adequate remedy at law. Aviles points out that, without a final judgment in cause number 9014041, he cannot appeal his conviction. We agree and

**15**

therefore hold that Aviles has no other adequate remedy at law for the relief he is seeking. The State contends that resolution of the direct appeal is an adequate remedy because it will completely settle the issue presented. It is unclear what the State is referring to by Athe direct appeal.@ Aviles has not brought a direct appeal of his conviction, but an appeal from the denial of relief in another cause. We construe the State=s argument to be that the Aviles may appeal any conviction that results from retrial of the indictments in this case. However, a direct appeal from a subsequent proceeding barred by double jeopardy is not an adequate remedy. *See Sanabria*, 437 U.S. at 64. Therefore, we conditionally grant the writ of mandamus compelling the trial court to enter a final judgment in cause number 9014041 reflecting the jury=s verdict in this case. The writ will issue only if the court fails to comply with our directive.

We reverse the order of the trial court denying habeas corpus relief and order that there be no further prosecution in cause numbers 002294 and 005714. We conditionally grant the writ of mandamus.

David Puryear, Justice

Before Chief Justice Aboussie, Justices Yeakel and Puryear

03-01-00584-CR -- Reversed and Rendered
03-01-00547-CV -- Mandamus Conditionally Granted

Filed: May 31, 2002

Publish