**Ex Parte Leon Vance MADDING, Applicant.**

**No. 74,082.**

Court of Criminal Appeals of Texas.

March 6, 2002.

Leon Vance Madding, pro se.

Tim Cone, DA, Gilmer, Matthew Paul, State's Atty., Austin, for State.

### OPINION

COCHRAN, J., delivered the opinion of the Court in which MEYERS, WOMACK, JOHNSON, HERVEY, and HOLCOMB, JJ., joined.

This is a post-conviction application for a writ of habeas corpus, filed pursuant to Article 11.07 of the Texas Code of Criminal Procedure.[1] Applicant was convicted of burglary of a building and sentenced to seventeen years imprisonment. Applicant has filed a *pro se* subsequent writ of habeas corpus. He claims a constitutional double jeopardy violation because the trial court initially ruled that his sentence would be served concurrently with another case from Gregg County, but the judgment, signed 52 days later, ordered this sentence to be served consecutively. Applicant's claim is both cognizable on a subsequent writ and meritorious. Therefore we grant relief.

### I.

A jury convicted Mr. Madding on July 11, 1994, of burglary of a building. Later that day, the jury assessed his punishment at seventeen years' imprisonment. Also that same day, the trial judge, in accordance with article 42.03,[2] pronounced ap-

---

1. Unless otherwise indicated, all references to Articles refer to the Code of Criminal Procedure.

2. Article 42.03, § 1(a) provides: "Except as provided in Article 42.14, sentence shall be pronounced in the defendant's presence."

plicant's sentence while applicant was in the courtroom. The prosecutor asked whether the judge was going to cumulate the sentence with some other (unspecified) sentence. On the record, the trial judge said: "I will let it run concurrent[ly]." No written judgment was signed until September 8, 1994, 52 days later. That written judgment states that the 17 year sentence would run consecutively to a Gregg County conviction.

Mr. Madding appeared in court on August 31, 1994, for a motion to revoke hearing in a different Upshur County case. There is no statement of facts from that proceeding in the habeas file. There is, however, a docket notation for this cause number and date stating that the sentence in the burglary case would be served consecutively.

On September 12, 1994, Mr. Madding was transferred to the Texas Department of Criminal Justice. The paperwork that accompanied him stated that his 17–year burglary sentence was to be served concurrent to other sentences.[3]

Applicant filed an initial writ of habeas corpus on May 31, 1996, challenging his conviction and alleging ineffective assistance of counsel at trial. At that time, applicant and this Court acted upon the assumption that his 17 year sentence was being served concurrently with others. This Court denied relief on that writ.

Eventually, the Texas Department of Criminal Justice found the written judgment of September 8, 1994, and stacked the Upshur County burglary sentence on top of the Gregg County conviction. Applicant filed this subsequent writ once he learned of the stacking order. We remanded the case for an evidentiary hearing to determine:

1) whether the trial court ordered this sentence concurrent to Applicant's other convictions when he pronounced sentence and when the cumulation order was entered; and

2) when applicant learned, or reasonably should have learned, that his sentence was stacked from the trial court or prison officials.

▇▇ The trial court's findings of facts on remand concluded that the first time something appeared in applicant's file showing that applicant knew about the stacking order was Mr. Madding's October 29, 1998, letter requesting a "time cut." Because the record supports this finding, we adopt it.[4] This date falls after applicant's first writ application had been denied by this Court. Thus, we conclude that applicant is entitled to have the merits of a subsequent writ considered because he has adequately demonstrated, by a preponderance of the evidence, that the factual basis for his claim was unavailable at the time of his initial application.[5] *See, e.g., Ex parte*

3. The written judgment was not among those papers.

4. There is no evidence that applicant ever received a copy of the written judgment, that he was present at the time the trial court signed the written judgment, or that applicant had ever, prior to filing his initial writ, acted in any manner inconsistent with a belief that his sentence in this case was running concurrently with the Gregg County case. Furthermore, Applicant produced a time sheet from TDCJ, dated June 11, 1996, which shows that the TDCJ records office had not noted the

cumulation order as of that date. Finally, we note that applicant stated in his first writ application that trial records were unavailable to him. Applicant's habeas file is rife with applicant's complaints about his inability to obtain his trial records. The trial court's docket sheet also reflects applicant's requests for records which were apparently unanswered.

5. Article 11.07, § 4, permits the consideration of a subsequent application for a writ of habeas corpus only under exceptional circumstances. Those circumstances include:

*Lemke,* 13 S.W.3d 791, 794 (Tex.Crim.App. 2000) (concluding that court would address merits of subsequent habeas application when applicant showed that present claim could not have been presented in his initial writ application because the factual basis for it was "unavailable").

Thus, we have both the jurisdiction and statutory authority to address the merits of his claim under article 11.07, section 4(a).

> (a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> . . .
>
> (c) For purposes of Subsection (a)(1), a factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.

**6.** The admirably astute *pro se* Applicant claims that a post-sentencing stacking of his sentence violates the double jeopardy clause. Indeed, there is support for his position. The historical rule in federal courts was that an increase in sentence after the defendant has commenced serving his punishment is a violation of his right not to be subject to double jeopardy. *See Ex parte Lange,* 85 U.S. 163, 168, 18 Wall. 163, 21 L.Ed. 872 (1873); *United States v. Turner,* 518 F.2d 14, 15 (7th Cir.1975); *United States v. Bowens,* 514 F.2d 440, 441 (9th Cir.1975). Federal courts had widely held that commencement of service of the sentence restricted the trial court's power to correct or amend a sentence. *See, e.g., United States v. Sacco,* 367 F.2d 368, 369 (2d Cir.1966). The premise underlying this rule was that a sentence, once imposed, was to be accorded the finality of a jury verdict and

## II.

■ Applicant contends that: 1) a defendant's sentence begins to run on the day it is pronounced; and 2) attempts to cumulate sentences after a defendant has begun serving his sentence are "void." He relies on *Ex parte Vasquez,* 712 S.W.2d 754, 755 (Tex.Crim.App.1986) and the Fifth Amendment of the United States Constitution.[6] Although we disavow the use of the term "void" in *Vasquez,* and rely

could not be increased without placing the defendant twice in jeopardy. The imposition of a sentence, it was reasoned, was tantamount to a verdict of acquittal on the possibility of greater punishment. Increasing the punishment placed the defendant twice in jeopardy respecting any greater punishment. *See United States v. Benz,* 282 U.S. 304, 307, 51 S.Ct. 113, 75 L.Ed. 354 (1931).

In *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Supreme Court rejected this reasoning and distinguished between a verdict of acquittal and the imposition of a sentence. Noting that there are many situations "under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even life," the Court concluded that "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 346. The Court used as examples the possibility of revocation of probation or parole and the pendency of appeal of a guilty verdict. *Id.* These examples are not comparable to the cumulation of separate sentences after the defendant has already begun serving his sentence. Indeed, the Supreme Court explicitly agreed that the examples it was using
> do not involve the increase of a final sentence, and while the defendant is aware at the original sentencing that a term of imprisonment later may be imposed, the situation before us is different in no critical respect. Respondent was similarly aware that a dangerous special offender sentence is subject to increase on appeal. His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked.

upon the Due Process Clause of the Fourteenth Amendment, we otherwise agree with applicant's position.

The court reporter's record shows that the trial judge imposed the applicant's sentence on July 11, 1994, and ordered it to run "concurrent."[7] On that day, applicant began serving his concurrent sentence.

■■■ A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement. Art. 42.01, § 1; see *Banks v. State*, 708 S.W.2d 460, 461–62 (Tex.Crim.App.1986) (reforming insufficient written judgment to accurately reflect cumulation order orally pronounced at sentencing). When the oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls. *Coffey v. State*, 979 S.W.2d 326, 328 (Tex.Crim.App.1998). The rationale for this rule is that the imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing and able to hear and respond to the imposition of sentence. Once he leaves the courtroom, the defendant begins serving the sentence imposed. Thus, "it is the pronouncement of sentence that is the appealable event, and the written sentence or order simply memorializes it and should comport therewith." *Id.*[8]

---

*Id.* at 346.

At least one federal court has distinguished *DiFrancesco* in the context of resentencing a defendant by holding that *if* a defendant's "legitimate expectations with respect to the duration of his sentence were frustrated by a resentencing enhancement, that enhancement or sentence increase *does* violate the double jeopardy clause." *United States v. Jones*, 722 F.2d 632, 638 (11th Cir.1983). We need not, however, resolve this uncertain area of federal double jeopardy law because applicant is clearly entitled to relief under the Due Process Clause of the Fourteenth Amendment.

7. The oral pronouncement of sentence included the following:

Judge: Mr. Madding, if you will, stand. The jury of your peers having found you guilty of the offense of burglary of a building as charged in the indictment and that jury having set your punishment at 17 years' confinement in the Institutional Division of the Texas Department of Criminal Justice, at this time it is the sentence of the Court that you be confined in the Institutional Division of the Texas Department of Criminal Justice for such 17–year period of time.

. . .

Mr. Madding, you are hereby remanded to the Sheriff to carry out this sentence.

D.A.: Your Honor, do you want to address the issue of concurrent or consecutive?

Judge: *I will let it run concurrent.*

8. This case involves due process, not the issue of a mere clerical error in the judgment.

Under many circumstances, however, a written judgment which does not accurately reflect the oral pronouncement of sentence is subject to correction via *nunc pro tunc* motion and order. There is neither need nor constitutional authority to raise an issue of an "inaccurate" or "incorrect" written judgment via habeas corpus. *See Ex parte Patterson*, 139 Tex.Crim. 489, 496, 141 S.W.2d 319, 323 (1940) (a mere irregularity in a judgment may be corrected by nunc pro tunc proceeding, but "the matter was not a subject for the granting of the writ of habeas corpus") (citing *Ex parte Beeler*, 41 Tex.Crim. 240, 241, 53 S.W. 857, 857 (1899)); *see also Ex parte Hannen*, 155 Tex.Crim. 10, 13, 228 S.W.2d 864, 866–67 (1950) (judgment may be held "void for want of a definite punishment having been in fact assessed," but if "a definite punishment was assessed and the entry of a judgment showing otherwise was by a clerical error, the judgment may be corrected by the court . . . to make the record speak the truth, by nunc pro tunc entry of the judgment as same was actually rendered in the case when tried"); *Ex parte Stansbury*, 155 Tex.Crim. 73, 74, 231 S.W.2d 431, 432 (1950) (same); *Ex parte Wingfield*, 162 Tex.Crim. 112, 113, 282 S.W.2d 219, 219 (1955) ("[i]f the error was in the entry of judgment and not in the pronouncement, the judgment was not void and was subject to correction by nunc pro tunc proceedings").

Thus, in a normal case, when the oral sentence has been "inaccurately" entered in a

The trial court in this case had statutory authority and discretion to decide whether applicant's seventeen year sentence should be served concurrent or consecutive to the Gregg County sentence. Art. 42.08(a). If a trial judge wants to "stack" a defendant's sentences so that they run consecutively, however, he must make such an order at the time and place that sentence is orally pronounced. *Ex parte Vasquez,* 712 S.W.2d 754, 755 (Tex. Crim.App.1986); *Ex parte Voelkel,* 517 S.W.2d 291, 292 (Tex.Crim.App.1975). Once applicant was removed from the courtroom and began serving his sentence, it was too late to cumulate the sentence just imposed with an earlier one. A trial court does not have the statutory authority or discretion to orally pronounce one sentence in front of the defendant, but enter a different sentence in his written judgment, outside the defendant's presence.

In *Vasquez,* this Court stated that entering a cumulation order in a written judgment which had not been orally pronounced to the defendant at his sentencing rendered the judgment "void."

The Court's use of the term "void" in that context was simply a shorthand rendition of a longer legal proposition: a defendant is constitutionally entitled to due process. At a bare minimum, due process requires that a defendant be given notice of the punishment to which he has been sentenced.[9] To orally pronounce one sentence to a defendant's face and then to sign a written judgment more than a month later, when the defendant is not present, that embodies an extravagantly different and more severe sentence than the oral sentence, violates any notion of constitutional due process and fair notice. A defendant has a due process "legitimate expectation" that the sentence he heard orally pronounced in the courtroom is the same sentence that he will be required to serve.[10]

Thus, we follow the well-established law set out in *Vasquez,* not because the written judgment was "void," but because it violates a defendant's constitutional right to due process to orally pronounce sentence to him and then later, without notice to the defendant and without giving him an opportunity to be heard, enter a

written judgment, litigants may obtain swift and complete relief via *nunc pro tunc.* The more cumbersome procedure of filing a writ of habeas corpus is slower, less effective and is subject to denial unless the applicant asserts and proves a jurisdictional defect or constitutional violation.

9. *See, e.g., Lankford v. Idaho,* 500 U.S. 110, 126, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) ("[n]otice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure"); *Baldwin v. Hale,* 68 U.S. 223, 1 Wall. 223, 233, 17 L.Ed. 531 (1863)("[c]ommon justice requires that no man shall be condemned in his person or property without notice and an opportunity to make his defense"); *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (due process requires that a person be given "reasonable notice of a charge against him, and an opportunity to be heard in his defense[,] ... to examine the witnesses against

him, to offer testimony, and to be represented by counsel").

10. *See, e.g., Downey v. United States,* 67 App. D.C. 192, 196, 91 F.2d 223, 229 (1937) (changes in the record of judgment made without notice to defendant or opportunity to be heard would deprive person of liberty without due process of law; "[p]roceedings in the absence of the appellant to correct the record would have been improper, since the ultimate question involved, the extent of valid imprisonment to which he might be subjected, was one of vital interest to him"); *compare United States v. Spiers,* 82 F.3d 1274, 1282 (3d Cir.1996) (because defendant had notice and was present in courtroom when judge imposed federal sentence consecutive to state sentence, due process notice was not violated simply because judge did not tell him the exact day his "stacked" federal sentence would begin to run).

written judgment imposing a significantly harsher sentence.

We therefore grant relief and order that the written judgment in this case be corrected to reflect that applicant's 17–year sentence is to run concurrently with the sentence he received in Gregg County.

KELLER, P.J., PRICE and KEASLER, JJ., concurred in the result.

HOLCOMB, J., filed a concurring opinion.

HOLCOMB, J., filed a concurring opinion.

The majority notes that "[a] written judgment which does not accurately reflect the oral pronouncement of sentence is subject to correction via *nunc pro tunc* motion and order." Op., pg. 135 n. 8. I agree, but only if the error is clerical in nature. A *nunc pro tunc* order is used to correct clerical errors, not judicial errors. *Wilson v. State,* 677 S.W.2d 518, 521 (Tex.Crim. App.1984). Judicial errors are those errors which are the product of judicial reasoning or determination. *State v. Bates,* 889 S.W.2d 306, 309 (Tex.Crim.App.1994); *see also, e.g., Smith v. State,* 15 S.W.3d 294, 299 (Tex.App.-Dallas 2000, no pet.) (error is judicial where record is "devoid of any indication that this order was mistakenly or inadvertently signed by the trial court"). Clerical errors, on the other hand, are those errors "in which no judicial reasoning contributed to their entry, and for some reason were not entered of record at the proper time." *Bates,* 889 S.W.2d at 309; *see also, e.g., Alvarez v. State,* 605 S.W.2d 615, 617 (Tex.Crim.App. 1980) (where this Court stated that "an error in the entry of a judgment will be styled as 'clerical' in nature, so long as the error did not come about as the product of judicial reasoning"; we concluded that a *nunc pro tunc* order was properly used to

correct the number of the convicting court in a judgment, after a deputy district clerk testified at a hearing that she had accidentally entered the wrong number in the original judgment).

With these comments, I respectfully join the opinion of the Court.