# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============================

## ON MOTION FOR REHEARING

===============================

## NO. 03-06-00074-CR

**Scott MacKenzie, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NO. 3041974, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant filed a motion for rehearing drawing our attention to his supplemental brief, which was received two days before the Court's original judgment and opinion were announced. The Court granted leave to file the supplemental brief and asked the State to respond to it and the motion for rehearing. We now grant the motion for rehearing and withdraw our previous opinion and judgment issued March 7, 2007 and substitute the following in its place.

A jury found appellant Scott MacKenzie guilty of burglary of a habitation with intent to commit sexual assault and assessed punishment at sixteen years' imprisonment. *See* Tex. Penal Code Ann. § 30.02 (West 2003). The judgment includes an order directing that the

sentence imposed shall begin when the sentence imposed in another cause has ceased to operate. *See* Tex. Code Crim. Proc. Ann. art. 42.08 (West 2006). Appellant contends that the trial court erred by permitting the State to introduce evidence of an extraneous offense and that the cumulation order was improperly entered. We overrule the first contention because it was not preserved for appeal. We sustain the latter contention, modify the trial court's judgment to remove the cumulation order, and affirm the judgment as modified.

The underlying facts are undisputed. On September 5, 2004, the complaining witness, K.B., fell asleep on the couch in her apartment living room while watching television with her roommate and a friend. After K.B. fell asleep, the roommate, L.M., went to her bedroom. Their friend, B.K., called a cab and went home, leaving the front door of the apartment unlocked. At about 3:30 a.m., K.B. awoke to find appellant standing in her living room with his pants down, masturbating. K.B. shouted at appellant to leave her apartment, then she ran to L.M.'s bedroom and awakened her. The two women heard appellant in the living room saying, "I'm sorry, I'm sorry." They called out for him to leave and he did.

The two women called B.K. and told her what had happened. They also called the police. B.K. returned to the apartment before the police arrived. When she answered a knock on the door, it was appellant. He was "apologizing profusely." B.K. told appellant to leave and that the police had been called. Appellant left but soon returned, saying that he wanted to apologize to K.B. B.K. told appellant that K.B. would not talk to him.

Appellant wrote two letters to K.B., both dated two days after the incident and hand-delivered to her apartment. In both letters, he apologized for his conduct and promised that it would

2

not happen again. In the second letter, appellant wrote, "I would never have entered your house if I hadn't thought that it was cool. I had talked to you through the window, and by your body movements thought that you were cognizant. It was only after I came in that I realized that you had in fact been asleep."

Appellant lived in the same apartment complex as K.B. and L.M., but in a different building. Both women were acquainted with him, having talked to him around the pool and at a nearby bar. K.B. testified that she and two friends had once accepted appellant's invitation to go to his apartment for drinks, but she had never invited appellant to her own apartment. L.M. testified that she arrived home one night a few months before the incident in question to find appellant standing in the dark outside the apartment. When she asked appellant what he was doing, he said he was looking for K.B.

Appellant's conduct on the night of September 5, 2004, had been introduced as an extraneous offense at appellant's 2005 trial for a sexual assault that occurred in July 2002. *See MacKenzie v. State*, No. 03-05-00731-CR, 2007 Tex. App. LEXIS 358 (Tex. App.—Austin Jan. 22, 2007, no pet. h.) (affirming conviction). Appellant testified at that earlier trial, and a portion of that testimony was introduced without objection at the instant trial in 2006. In his testimony, appellant said that he was walking past K.B.'s apartment on September 5 when he saw her through the window. He became sexually aroused and opened his pants. Not realizing that K.B. was asleep, appellant spoke to her. She "fidgeted," which appellant took as consent for him to enter her apartment. Appellant said that after he entered the apartment and K.B. awoke, he realized that he had made "a horrible mistake."

3

Over appellant's objection, the trial court also permitted the State to offer evidence of the July 2002 sexual assault.[1] H.M., the complainant in that case, testified that she was visiting Austin and staying with a friend, A.W. H.M. was acquainted with appellant, who was then dating A.W. On the night in question, H.M. went to bed in A.W.'s bedroom while appellant and A.W. slept elsewhere in the apartment. During the night, H.M. awoke to find appellant in her bed and having sexual intercourse with her.

Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's bad character in order to show action in conformity to that character. Tex. R. Evid. 404(b). Extrinsic misconduct evidence may be admissible for other purposes, however, such as to prove intent, motive, or absence of mistake. *Id*. For example, in the opinion affirming appellant's conviction for the 2002 sexual assault, this Court held that the testimony regarding the facts of the instant offense was properly admitted to prove the complainant's lack of consent. *See MacKenzie*, 2007 Tex. App. LEXIS 358, at *8. We noted that in his testimony, appellant had asserted that he thought the sleeping H.M. had consented to his conduct through her body language. *Id*. Evidence that in 2004, appellant had similarly interpreted the sleeping K.B.'s movements as consent to sexual activity invoked the "doctrine of chances" to show that appellant intended to have sexual intercourse without H.M.'s consent. *Id*.; *see Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.) (discussing doctrine of chances and use of extraneous offense evidence to prove intent).

---

[1] In other words, the September 2004 incident was introduced as an extraneous offense at appellant's trial for the July 2002 sexual assault, and the July 2002 assault was introduced as an extraneous offense at this trial for the September 2004 incident.

4

Just as the testimony regarding the instant offense had been introduced at appellant's trial for the 2002 sexual assault to prove intent and lack of consent in that case, the State offered H.M.'s testimony regarding the 2002 assault at the instant trial to prove K.B.'s lack of consent and appellant's intent to commit sexual assault.[2] Appellant contends that this was error because the evidence at this trial did not establish that the charged offense and the 2002 extraneous offense possessed sufficient similarities for the doctrine of chances to apply. Appellant also urges that any probative value the extraneous offense might have had was outweighed by the danger of unfair prejudice to the defense. *See* Tex. R. Evid. 403.

Under the doctrine of chances, there must be a similarity between the charged and extraneous offenses, because it is the improbability of a like result being repeated by mere chance that gives the extraneous offense probative weight. *Brown*, 96 S.W.3d at 512. The degree of similarity required, however, is not as great when intent is the material issue as when identity is the material issue and the extraneous offense is offered to prove *modus operandi. Id*. at 512-13.

The admissibility of the July 2002 sexual assault was argued outside the jury's presence. Asked by the court to describe the similarities between the charged offense and the extraneous offense, the prosecutor cited:

> • [T]he fact that she moved, that was his version of what it takes for a woman to consent, for him to approach her, is exactly the same type of evidence that was elicited at the last trial where the movement of the body by [H.M.] was consent for him to have sex, because she never verbally consented.

---

[2] It is not clear whether the State was seeking to prove K.B.'s lack of consent to appellant's entry into her apartment, her lack of consent to his sexual activity, or both.

• In the [H.M.] case it is very similar, in that she is asleep when he decides to have sex with her. He approaches her while she is asleep. She never agreed to have sex. She never had a relationship with him. He crawls into bed with her, and this man is having sex with her while she is asleep.

• When she awoke, he left. Just like in this one, when [K.B.] awoke, that is when he stopped his advances.

The court found that the two offenses were "significantly similar in nature, and enough to be admissible for the purposes of showing intent in this instance."

Appellant points out that the jury did not hear evidence of all the similarities between the two offenses cited by the prosecutor and relied on by the court in its ruling. As previously noted, H.M. testified that appellant had sexual intercourse with her while she was asleep. But the jury did not hear evidence that appellant said that he interpreted H.M.'s body movements as signifying her consent to the sexual intercourse. The jury also did not hear evidence that appellant stopped his assaultive behavior when H.M. awoke. Of the similarities mentioned by the State outside the jury's presence to justify the admission of the extraneous offense, the jury heard only that in 2002, appellant approached a sleeping woman and engaged in sexual activity, albeit of a kind different from that alleged in this case.

The situation before us is analogous to the one presented in *Fuller v. State*, 829 S.W.2d 191, 196-99 (Tex. Crim. App. 1992). In *Fuller*, a capital murder case, the defendant objected to the introduction at the punishment phase of testimony describing the beliefs and activities of the Aryan Brotherhood, a prison gang. *Id*. at 196. The defendant urged that the evidence was irrelevant because the State had not shown that he was a member of the gang or subscribed to any of its beliefs. *Id*. The trial court overruled the objection and admitted the testimony, subject to the

6

State later proving appellant's connection to the gang. *Id*. at 197; *see* Tex. R. Evid. 104(b). No such connection was made. *Fuller*, 829 S.W.2d at 197-98. The court of criminal appeals held that without probative evidence that the defendant was a member of the Aryan Brotherhood or subscribed to its beliefs, the previously admitted testimony concerning the gang's beliefs and activities in the abstract "was vulnerable to a motion to strike at the conclusion of the State's case, even if it was not objectionable on relevancy grounds when offered." *Id*. at 198. The court went on to hold that it is not the trial court's duty to notice whether conditionally admitted evidence is eventually "connected up"; rather, the objecting party must reurge his objection after all the proof is in, ask that the offending evidence be stricken, and request that the jury be instructed to disregard it. *Id*. at 198-99. Because the defendant did not do this, the error was not preserved for appeal. *Id*.

In the cause before us, evidence regarding appellant's 2002 sexual assault of H.M. was relevant to prove K.B.'s lack of consent and appellant's intent to commit sexual assault only to the extent that the extraneous offense and the charged offense were shown to be sufficiently similar to invoke the doctrine of chances. Based on the State's proffer, the trial court did not abuse its discretion by ruling that the similarities between the 2002 incident and the 2004 incident warranted admission of the extraneous offense pursuant to rule 404(b) and that the probative value of the evidence outweighed the danger of unfair prejudice. However, the State failed to introduce before the jury all the proffered evidence regarding the similarities between the charged and extraneous offenses on which the relevance of the extraneous offense depended. Had appellant moved to strike H.M.'s extraneous offense testimony at the close of the State's case and had the trial court overruled the motion, it is possible that reversible error would be presented. But appellant did not renew his

7

objection and did not move to strike H.M.'s testimony. We must conclude that any error in the admission of H.M.'s testimony was not preserved for review.

In his supplemental brief, appellant contends that the trial court's written judgment improperly orders that the sentence in this cause is to begin after the sentence in cause number 3021959, the July 2002 sexual assault, ceases to operate. Although he concedes that the court had the discretion to order that he serve the sentences consecutively, appellant argues that the court failed to make the cumulation order at the time sentence was orally pronounced and could not thereafter add the cumulation order to its written judgment.

A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement. *Banks v. State*, 708 S.W.2d 460, 461-62 (Tex. Crim. App. 1986). When the oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls. *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). If a trial court wants to "stack" a new sentence on a sentence previously imposed in another cause, the court must make the cumulation order at the time and place that the new sentence is orally pronounced. *Ex parte Madding*, 70 S.W.3d 131, 136 (Tex. Crim. App. 2002); *Ex parte Vasquez*, 712 S.W.2d 754, 755 (Tex. Crim. App. 1986). The rationale for this rule is that the imposition of sentence is the crucial moment when all the parties are physically present and able to hear and respond to the sentence. *Madding*, 70 S.W.3d at 135. In addition, the defendant begins serving the sentence imposed when he leaves the courtroom. *Id*. Once the defendant has suffered punishment under the sentence originally imposed, it is beyond the

authority of the trial court to add a cumulation order to the judgment. *Ex parte Voelkel*, 517 S.W.2d 291, 292 (Tex. Crim. App. 1975); *Ex parte Reynolds*, 462 S.W.2d 605, 608 (Tex. Crim. App. 1970).

The record reflects and the State concedes that the trial court did not make a cumulation order when it orally imposed sentence in this cause. Nevertheless, the State argues that this cause is distinguishable from the cases cited above because (1) appellant was informed by the court that the sentence would be cumulated and (2) the sentence imposed orally "did not vary from the written judgment but was, at worst, merely a partial pronouncement." Neither argument is persuasive.

The State asserts that the trial court informed appellant at arraignment, two months before trial began, that the sentence in this cause would be stacked on the sentence imposed in the earlier case. The record does not support this assertion. The record reflects that after being told at arraignment that appellant had refused the State's plea offer of a five-year sentence to run concurrently with the earlier sentence, the court admonished appellant that "whatever time, if convicted, that you get on this offense can be stacked on top of whatever time you have previously received." Appellant said that he understood this. The court added, "So that the sentences will not run at the same time; they would run one after the other. Do you understand that?" Again, appellant said that he understood. The court continued, "And that is different than what the State is offering you now. Do you fully understand that?" Appellant said that he did. Contrary to the State's contention, we do not understand the trial court's admonition to appellant during arraignment to be that it *would* cumulate the sentences if appellant did not accept the State's offer, but only that it *could*

9

do so.[3]  In any event, the justification for the rule announced in opinions such as *Madding* and

*Vasquez* is not merely to give notice to the accused.  Rather, the rule reflects the trial court's lack of

authority to alter the sentence imposed after the accused has begun to serve it.  *See Voelkel*, 517

S.W.2d at 292; *Reynolds*, 462 S.W.2d at 608.  Appellant began serving the sentence in this cause

when he left the courtroom after sentence was orally pronounced.  *See Madding*, 70 S.W.3d at 135.

The State's second argument, that the trial court "partially pronounced" the sentence

imposed, is an elaboration on the first.  After recalling the exchange between the court and appellant

at arraignment, the State notes that it filed a motion to cumulate sentences on the day trial began, that

a copy of the motion was served on appellant's counsel, and that the court signed an order granting

the motion on the day sentence was orally pronounced in open court.  The State argues that in this

context, "the sentence was cumulative and thus there was no variance between the oral

pronouncement and the written judgment."  As we understand it, the State is arguing that because

the trial court had so clearly indicated that it intended to cumulate the sentences, its failure to do so

when orally pronouncing sentence should be disregarded.

This case does not present as egregious a situation as was shown in *Madding*, where

the trial court orally announced that the sentence would run concurrently only to later add a

cumulation order to its written judgment.  *See id.* at 133.  Moreover, it is obvious from the record

that the trial court intended to make a cumulation order, and appellant and his attorney had every

reason to anticipate one.  But even if we assume that the trial court signed the order granting the

---

[3]  For this reason, we need not decide whether it would have been proper for the trial court to make the cumulation decision in advance of trial and without hearing evidence.

State's motion to cumulate before pronouncing sentence, a fact not shown by the record, the court did not announce its ruling in open court when sentence was imposed. "A trial court does not have the statutory authority or discretion to orally pronounce one sentence in front of the defendant, but enter a different sentence in [its] written judgment, outside the defendant's presence." *Id*. at 136. Under a clear line of authority for which we find no meaningful distinction, the trial court, having failed to cumulate the sentence when it was orally pronounced, was not authorized to add the cumulation order to the written judgment of conviction signed two weeks later.[4]

The district court's judgment is modified to delete the order directing that the sentence in this cause shall begin when the judgment and sentence in cause number 3021959 has ceased to operate. As modified, the judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Modified and, as Modified, Affirmed on Motion for Rehearing

Filed: May 3, 2007

Do Not Publish

---

[4] This case is not governed by the holding in *State v. Aguilera*, 165 S.W.3d 695, 698 (Tex. Crim. App. 2005). There, the court held that a trial court has plenary power to modify its sentence if the modification is made on the same day as the assessment of the initial sentence and before the court adjourns for the day. *Id*. But the resentencing must be done in the presence of the defendant, his attorney, and counsel for the State. *Id*. and 700 n.6 (Cochran, J., concurring).