*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


## MEMORANDUM OPINION

No. 04-08-00235-CR

Gilbert Lee **SANDOVAL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A-98-32
Honorable Stephen B. Ables, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed:    April 15, 2009

AFFIRMED

This is an appeal from the trial court's order revoking defendant, Gilbert Lee Sandoval's community supervision and denying his motion to suppress.[1] In two issues on appeal, defendant asserts the trial court erred in denying his motion to suppress and the evidence was legally and factually insufficient to revoke his community supervision. We affirm.

---

[1] The State's motion to revoke arises from trial cause number A98-32. Defendant's motion to suppress arises from trial cause numbers A08-38 and A08-37. All parties and the trial court agreed to hear both motions at the same hearing.

## MOTION TO SUPPRESS

Defendant asserts the trial court erred in denying his motion to suppress because he did not consent to the search of his bedroom.

The record establishes that defendant and Diana Bush lived together in Bush's home from November 2005 through March 26, 2007. During this time, defendant would occasionally move out and then move back in. Defendant had his own bedroom and bathroom, although Bush admitted she and defendant had a brief romantic relationship. In exchange for room and board, defendant was to provide Bush with construction work on her property. Bush said defendant was not "current" on his obligations.

The door to defendant's room did not have a lock and when defendant was not in the room, he typically kept the door open. Bush testified she did not use defendant's bathroom, but she kept some of her clothes in two drawers of the same dresser used by defendant in his bedroom. All the furnishings in the room belonged to Bush. Bush said the only time she went into defendant's bedroom was to put his laundry on his bed. Bush also said other workmen at her house would come into the house to use defendant's bathroom. Bush testified that, on the morning of March 26, 2007, she asked a friend to call the police and ask the police to come to her house because defendant was threatening her with bodily harm. When the police arrived, Bush told them she had previously been considering having defendant evicted from her house. Bush later told the police she did not want to file any criminal charges against defendant.

Defendant was not present at the house when the police arrived. However, while the police were in the house, Bush received a telephone call from a male she identified as defendant. Bush

stated she recognized defendant's voice. Bush said defendant asked, "When can I come get my shit?" At this point, Bush told the caller "one moment, please," and handed the telephone to Officer Jeffrey Bowman.

Officer Bowman testified the caller identified himself as Gilbert Sandoval, at which time Bowman asked defendant for his consent to search his bedroom and its contents. Bowman said the caller told him "there would be no problem" with a search of his room. Bowman admitted he had never met or spoken with defendant prior to this time, and other than the caller identifying himself as the defendant, Bowman did not in any other way verify the caller's identity. Bowman said he also asked defendant if there was any contraband in the room and defendant told him "we might find a baggie [of marijuana] in his room." Bowman then handed the telephone to Officer Hicks for the purpose of having defendant verify his consent to search. When asked why he wanted to search defendant's room, Bowman replied that Bush's description of defendant in the days prior to the search, as sleeping during the day, awake at night, experiencing mood swings, led him to believe defendant was using narcotics.

After Hicks hung up the telephone, the police searched defendant's room and found, in the drawer of a dresser, a small baggie containing traces of a white powdery residue, which later tested as cocaine. Also found in the drawer were a set of keys, one of which opened a lockbox in the bedroom closet. Inside the lockbox, the officers found a handgun, bullets, and defendant's birth certificate. Bush testified she was surprised the lockbox and gun were in the house because she had previously given both to defendant's sister and asked her to remove them from the house. Finally, also in the drawer, the officers found mail receipts in defendant's name. Nothing in either the drawer

or lockbox had Bush's name on it; however, other drawers in the dresser contained items belonging to Bush. After completing the search of defendant's room, the officers asked for and received Bush's consent to search the rest of her house. In the bathroom used by defendant, the officers found "a green metal pipe burned at the end." Bowman admitted he did not finger-print any of the items found in defendant's room or bathroom, and he made no determination of whether the gun was registered to defendant. The day after the search, Bowman interviewed and then arrested defendant at defendant's place of employment. Bowman testified that defendant said he found the baggie when he pulled up carpet in a house where he was working and he brought it home and threw it in his drawer.

On appeal, defendant argues the police did not have valid consent to search his bedroom because any consent given by Bush was rendered invalid based on her antagonism toward him and the oral consent allegedly given by the male caller was invalid because the police did not identify the voice as his and no other person validated his identity as the caller. We disagree with both arguments.

When the State relies upon consent to justify a warrantless search, the State bears the burden of proof to show that consent was given by one authorized to give such consent. *May v. State*, 780 S.W.2d 866, 869 (Tex. App.—Dallas 1989, pet. ref'd). Defendant relies on *May* for his argument that Bush's antagonism toward him invalidated her consent to search his room. In *May*, an "estranged wife" who had moved from the defendant's house several months before the search and who was antagonistic to the defendant, gave officers permission to search the defendant's house. The evidence in *May* showed the estranged wife was working with police officers to "set up" the

defendant and have him arrested. There are no such facts in the instant case. Although Bush told police she was "looking into [the] process [of evicting defendant]," and she was apparently unhappy that he had not finished the work he was to perform in exchange for room and board, Bush also declined to press criminal charges against defendant based on her allegation that he had threatened her with bodily harm. Bush owned and lived in the house, the door to defendant's bedroom was generally left open, and Bush owned all the furnishings in defendant's room. Persons who have equal access to and control over premises have authority to authorize a search. *Swink v. State*, 617 S.W.2d 203, 210 (Tex. Crim. App. 1981). We conclude any antagonism felt by Bush toward defendant did not rise to such a level as to invalidate her consent to search his room. Therefore, the trial court did not abuse its discretion in denying the motion to suppress on this basis.

As to the oral consent given by the male caller, Bush said she was familiar with defendant's voice and she identified him as the caller. As the trier of fact free to believe or disbelieve Bush's testimony, we cannot conclude the trial court abused its discretion in denying the motion to suppress on the grounds that defendant himself consented to the search.

## REVOCATION OF COMMUNITY SUPERVISION

Defendant asserts the trial court erred in revoking his community supervision because there is no evidence linking the controlled substance and firearm found in his bedroom to him. Defendant's argument is premised on his contention that the trial court's revocation order is based solely on findings that he had committed "the new offenses" of possession of a controlled substance and possession of a firearm by a felon. Defendant bases this contention on the following statement made by the trial court at the end of the hearing: "I am going to find that [defendant] has committed

the offenses that are laid out in the motion to revoke." Defendant construes this statement as a pronouncement by the court that it found he had committed only the "offenses" of possession of a controlled substance and possession of a firearm by a felon, and not a finding that he had committed any of the other violations alleged in the State's motion to revoke.

In its motion to revoke, the State alleged seven violations of defendant's community supervision, including (1) not committing any offense against the laws of Texas, (2) avoid injurious or vicious habits, (3) use no drugs or controlled substances, unless prescribed by a physician, (4) pay his probation fees as ordered, (5) file certain financial statements following default in any court-ordered payment, (6) perform community service as ordered, and (7) pay restitution to the Sheriff's Department. Defendant pled "not true" to all seven alleged violations. At the hearing, the State presented evidence regarding the discovery of a controlled substance and a firearm in defendant's bedroom, as well as his failure to pay his probation fees, file certain financial statements, perform community service, and pay restitution. At the close of evidence, the trial court stated "I am going to find that [defendant] has committed the offenses that are laid out in the motion to revoke." The trial court's written order states the trial court found defendant violated the terms and conditions set forth in the State's motion to revoke.

"A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement." *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). "When the oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls." *Id.* Here, we conclude there is no variance between the trial court's oral pronouncement and its written order. Instead, the

court's oral pronouncement is consistent with its written order finding that defendant had violated all the terms and conditions listed in the State's motion to revoke.

Proof of a single violation is sufficient to support a revocation. *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. 1979). A trial court's revocation order should be affirmed if the appellant does not challenge all of the grounds on which the court revoked community supervision. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980). Here, defendant did not challenge on appeal all seven grounds on which the trial court revoked his community supervision; therefore, we cannot conclude the court erred in revoking defendant's community supervision.

## CONCLUSION

We overrule defendant's issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice

DO NOT PUBLISH