**Opinion issued October 27, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-15-00727-CR

_____

**TRE NICHOLAS WILLIS-WEBB, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

### On Appeal from the 230th District Court
### Harris County, Texas
### Trial Court Case No. 1374103

---

### MEMORANDUM OPINION

Appellant, Tre Nicholas Willis-Webb, pleaded guilty to aggravated robbery; the trial court accepted appellant's plea, deferred a finding of guilt, and placed appellant under deferred adjudication community supervision for seven years. The

State later moved to adjudicate guilt, alleging that appellant had violated the terms of his community supervision by, among other things, committing a theft. After a hearing on the State's motion, the trial court revoked appellant's community supervision, adjudicated him guilty of the aggravated robbery, and assessed punishment at six years' confinement. In a single issue on appeal, appellant contends there was insufficient evidence to revoke his community supervision and adjudicate guilt. We affirm.

## BACKGROUND

### A. Conditions of Community Supervision and the State's Motion to Adjudicate Guilt

In April 2013, appellant pleaded guilty to aggravated robbery with a deadly weapon. In June 2013, the trial court placed him on deferred adjudication community supervision for a term of seven years. The conditions included, in relevant part, that appellant:

(1) Commit no offense against the laws of this or any other State of the United States.

(2) Avoid injurious or vicious habits. You are forbidden to use, possess, or consume any controlled substance, dangerous drug, marijuana . . . .

. . . .

(4) Report . . . in person, to the Community Supervision Officer for the 230 District Court . . . on the 10th day of each month . . . for the remainder of the supervision term unless ordered differently by the Court.

2

. . . .

(7) Work faithfully at suitable employment and present written verification of employment . . . to your Community Supervision Officer on each reporting date . . . .

(11) Participate in the HCCS&CD Community Service Restitution Program (CSRP). You shall perform a total of 300 hours, at the rate of 10 hours per month beginning 08/10/2013.

(12.1) Pay a Supervision Fee at the rate of $60.00 per month for the duration of your community supervision . . . .

(12.2) Pay a Fine of $500.00 and Court Costs at the rate of $20.00 per month . . . to Harris County . . . .

(12.3) Pay laboratory Fees of $5.00 per month . . . .

(12.5) Pay $394.47 Restitution at the rate of $25.00 per month . . . to: Lauren McClendon.

The State filed a Motion to Adjudicate Guilt in November 2014 based upon appellant's alleged violations of all of the above mentioned conditions, namely: one incident of theft from Wal-Mart, two separate incidents of marihuana use, failure to report to the Community Supervision Officer for November 2014, failure to present written verification of employment for 14 different months, and failure to pay any of the fees or fines listed above.

**B. The Alleged Theft**

3

Yaharia Contreras, loss prevention associate at Wal-Mart, saw appellant walk toward the electronics department and grab several items, including computer speakers and video game controllers, which he then placed in his shopping cart. Appellant then walked to the housewares department, where he took a laundry hamper and placed the electronic items in the hamper. Contreras followed appellant to the front of the store, where appellant took a bottle of water from a cooler and an empty bag from a register that was not open. Appellant then went to the men's department where he put a few items in the empty shopping bag. Contreras watched as appellant approached the "general merchandise" exit, where he was stopped by a greeter asking for his receipt.

After briefly speaking with the greeter, appellant then turned back into the store and headed toward the "grocery" exit of the store. At the "grocery" exit, appellant was not stopped by a greeter, and he passed through the first exit door, before being stopped in the vestibule, which is beyond all points of sale, by Contreras and several security guards. Contreras introduced herself as a store-security employee and asked appellant to accompany her to her office. Appellant turned as if to comply before he abandoned the property, fled through the second exit door to his car in the parking lot, and drove away. Contreras followed appellant into the parking lot and obtained the license plate number of his car. Contreras called the police to report the incident, and the police tracked down and arrested appellant.

4

Contreras's testimony about the incident was confirmed by store surveillance video, which was introduced into evidence at trial.

## C. Trial Court Findings and Adjudication of Guilt

The trial court found for the State and assessed appellant's punishment at six years' confinement. In the oral rendition of judgment, the court explained that it found "the allegations in the motion to adjudicate guilt to be true," without specifying which of the terms was violated. However, the written Judgment Adjudicating Guilt that the trial court signed stated that "Defendant violated the terms and conditions of community supervision . . . as follows: Defendant did then and there commit a law violation against this State or any other state of the United States."

## SUFFICIENCY OF THE EVIDENCE

In a single point of error, appellant argues that insufficient evidence was presented by the State that appellant violated the terms of his community supervision by committing the offense of theft.

## A. Standard of Review

We review a motion to adjudicate guilt in the same manner as a motion to revoke community supervision. *See Leonard v. State*, 385 S.W.3d 570, 572 n.1 (Tex. Crim. App. 2012) (holding hearings on motion to adjudicate guilt are subset of revocation hearings). We review a trial court's decision to adjudicate guilt and

revoke community supervision using an abuse of discretion standard. *See id.* at 576. We view the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The trial court "is the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). The State bears the burden to prove by a preponderance of the evidence that appellant violated a condition of his community supervision. *Id.* at 864–65. This burden is met if the greater weight of the credible evidence creates a reasonable belief that appellant violated a condition of his community supervision. *See Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006).

## B. Analysis

Appellant argues that the State has not established the elements of theft by a preponderance of the evidence; specifically appellant contends the State has presented no evidence that he took the items without Contreras's consent. Therefore, appellant asserts, this Court should reverse the trial court's judgment adjudicating guilt, which stated that the revocation was based on appellant's committing a violation against the law.

### 1. Discrepancy Between Oral and Written Judgment

The State first contends that it does not need to prove a theft because it also proved other violations of the conditions of community supervision, and the trial court's oral judgment found "the allegations in the motion to adjudicate guilt to be true." The State argues that since the trial court orally found all the allegations in its motion true, appellant was required to challenge all of the allegations on appeal, which he did not do.

In support of its contention the State relies on case law holding that "[w]hen there is a conflict between the oral pronouncement of a sentence and the sentence in the written judgment, the oral pronouncement controls." *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). However, *Taylor*, as well as other cases that apply this rule, differs from this case in one important way. In *Taylor* and similar cases the discrepancy between the oral pronouncement and the written judgment involved the sentence. *See id.* However, in this case the sentence is the same, but the enumerated probation violation giving rise to the sentence differs. The *Taylor* rule is entirely based on the discrepancy being in the *sentence* itself. "The rationale for this rule is that the imposition of sentence is the crucial moment when all of the parties are physically present at the sentence hearing and able to hear and respond to the imposition of sentence." *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). The concern this rule addresses is the defendant's Fifth Amendment due

process right to hear his sentence correctly as it will be administered. *See id.* at 134–36*; see also Taylor*, 131 S.W.3d at 500.

However, when the discrepancy between the oral pronouncement and written judgment involves which terms and conditions of probation were violated, and on the basis of which violations the probation should be revoked and adjudication of guilt should be entered, the written order of the court controls over the oral announcement. *Eubanks v. State*, 599 S.W.2d 815, 817 (Tex. Crim. App. 1980). In *Eubanks*, the trial court pronounced orally that "[appellant] did violate the terms and conditions of probation and his probation should be revoked," while the written order stated the grounds that appellant committed an offense against the state by public intoxication and disorderly conduct. *Id.* The Texas Court of Criminal Appeals held that, since appellant correctly asserted that evidence failed to support those specific grounds, the trial court abused its discretion in revoking probation. *Id.* at 817-18. Therefore, if there is insufficient evidence to support the grounds stated in the written judgment, in this case theft, the trial court abused its discretion in revoking community supervision, despite an oral pronouncement that the defendant generally violated the conditions. *See id.*

The court in *Coffey v. State* makes this distinction explicitly:

We have held that the written findings of the court control over an oral announcement. *Eubanks v. State*, 599 S.W.2d 815, 817 (Tex. Crim. App. 1980); *Aguilar v. State*, 542 S.W.2d 871, 874 (Tex. Crim. App. 1976); *Ablon v. State*, 537 S.W.2d 267, 269 (Tex. Crim. App. 1976).

8

These cases all involved written probation revocation orders based upon grounds which were inconsistent with the oral pronouncement of revocation. The basis for revocation stated in the written order controlled . . . In the instant cause, the dispute is not over the findings on the allegations of probation violation or the basis of the revocation. The dispute is over the sentence assessed . . . [W]hen there is a variation between the oral pronouncement of sentence and the written memorialization of the sentence, the oral pronouncement controls.

979 S.W.2d 326, 328 (Tex. Crim. App. 1998).

In the instant case, the discrepancy between the oral pronouncement and the written judgment was in grounds of revocation found rather than in the sentence. Even though the trial court orally stated that it found "the allegations in the motion to adjudicate guilt to be true," the written judgment states that appellant's deferred adjudication was being revoked because appellant committed another crime, i.e., theft. Because the written judgment gave only one ground for revocation—theft— that is the only grounds that appellant need attack on appeal. Thus, we reject the State's argument that this case can be affirmed based on the other grounds for revocation asserted in its motion.

Thus, we turn to appellant's sole issue on appeal, i.e., whether the State presented sufficient evidence that appellant violated the terms of his community supervision by committing theft.

### 2. Theft

A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2016). "Appropriate" means to acquire or otherwise exercise control over property other than real property. *Id.* at § 31.01(4)(B). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* at § 31.03(b)(1). It follows that theft has three elements: 1) an appropriation of property; 2) unlawfulness of the appropriation; and 3) intent to deprive the owner of the property. *Hawkins v. State*, 214 S.W.3d 668, 670 (Tex. App.—Waco 2007, no pet.). Asportation—the act of carrying away or removing property—is not an element of theft. *See Barnes v. State*, 513 S.W.2d 850, 851 (Tex. Crim. App. 1974).

Appellant contends that the State brought no sufficient evidence regarding the second element, i.e., that the appropriation was unlawful because it was without Contreras's consent. Appellant's main argument is that, at the time that appellant appropriated the property, it was not without Contreras's effective consent because he was still in the store. Appellant points to Contreras's testimony that she thought he might pay for the items—in which case the appropriation would be with her consent. At no point, appellant contends, was he in possession of the merchandise in a location without Contreras's consent.

It is the appropriation itself that must be unlawful, and until the appropriation becomes unlawful, it is not theft. *See* TEX. PENAL CODE ANN. § 31.03; *see also*

*Anderson v. State*, 322 S.W.3d 401, 407-08 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Barnes v. State*, 824 S.W.2d 560, 562 (Tex. Crim. App. 1991), *overruled on other grounds* by *Proctor v. State*, 967 S.W.2d 840, 842 (Tex. Crim. App. 1998)). Appellant argues that if, when Contreras confronted appellant, she had tried to prevent him from leaving the store without paying, and instead of fleeing he had refused to pay and proceeded to leave the store with the merchandise nonetheless, that would be sufficient evidence that he had appropriated Contreras's property without her effective consent. *See Martinez v. State*, No. 02-14-00423-CR, 2015 WL 1967442, at *1 (Tex. App.—Fort Worth Apr. 30, 2015, no pet.) (mem. op., not designated for publication) (ruling that evidence was sufficient to show lack of consent under those circumstances).

However, the evidence does show that Contreras *did* confront appellant in the vestibule, along with two other security guards, and tried to prevent him from leaving by asking him to come to her office, at which point appellant abandoned the merchandise (asportation is not an element) and fled. That Contreras and the security guards attempted to stop appellant after he passed the first exit door and entered the vestibule, but before passing the second exit door, is some evidence that possession of unpaid-for merchandise taken from inside the store into the vestibule area is without the owner's consent.

The record also shows that appellant approached at least one greeter, who apparently asked for appellant's receipt, before appellant turned and went back in the store. Contreras testified that greeters are authorized to ask for receipts to make sure that people do not leave the store without paying. That guests are generally not permitted to pass the greeters on the way to the exits without a receipt is at least circumstantial evidence that possession of unpaid merchandise from inside the store beyond that point is without the owner's consent.

We therefore conclude that the greater weight of the credible evidence creates a reasonable belief that appellant violated a condition of his community supervision by committing a theft, and that the trial court did not abuse its discretion by revoking appellant's community supervision and adjudicating his guilt on this ground.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).