Opinion issued May 28, 2026



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-24-00388-CR

———————————————

**JOSE ANGEL RENTERIA GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1780245**

---

## OPINION

A jury convicted Appellant Jose Angel Renteria Garcia of the first-degree felony offense of continuous sexual abuse of a child younger than fourteen years of age and assessed his punishment at thirty years in prison. In two issues on appeal, Renteria argues that (1) his counsel rendered ineffective assistance of counsel by

failing to object during trial to the testimony of two designated outcry witnesses, and (2) the trial court erred in denying his motion for mistrial after an alternate juror mistakenly participated in deliberations during the guilt-innocence phase of trial.

We affirm the trial court's judgment.

## Background[1]

Appellant Jose Angel Renteria Garcia was charged by indictment with the offense of continuous sexual abuse of Amanda, a child younger than fourteen years of age.

Renteria is married to Amanda's mother, Kylie.[2] In the early morning of July 26, 2022, Kylie woke up and noticed that Renteria was not in their bed. Viewing real-time footage from a motion-activated camera inside Amanda's bedroom, Kylie saw Renteria standing next to Amanda's bed with his pants down. Amanda was "laying down and her legs were up."

---

[1] In this opinion, we use pseudonyms for the complainant, her mother, and her aunt to protect the complainant's privacy. *See* TEX. R. APP. P. 9.8(b)(2); *see also* TEX. CODE CRIM. PROC. art. 58.152 (permitting the use of pseudonyms for sexual-assault victims).

[2] Kylie lived with Renteria, Amanda, and two younger children she had with Renteria.

Kylie called her sister, Lisa, who immediately came over to Kylie's house.[3] When Lisa arrived, Amanda and Kylie were crying. Lisa testified at trial that Amanda was "distraught." She put Amanda in her car and "she was just crying." Amanda told Lisa that "she wanted her old daddy back in the house . . .[the] one that didn't put his testicles in [her] vagina." Lisa called the police.[4]

Police and paramedics arrived at the house. Lisa told the police that she did not think Renteria "actually did anything." Kylie described what she saw in the motion-activated camera. She told the police that Renteria's pants were down to his knees and that Amanda's pants were down to her thighs.[5]

Melissa Sears, one of the paramedics, testified that when she arrived at the house, Amanda told her "that her dad [had] put his thing in her thing" and she complained of vaginal pain. Renteria told one of the investigating officers that he pulled down Amanda's shorts. In a later interview, he claimed the abuse had occurred only that one time.

---

[3] The exact time of the alleged assault is not certain. Kylie testified that Renteria got up at around 3:30 a.m., the time he usually gets up to go to work, and that is when she found him in Amanda's room. Lisa testified that Kylie called her at about 2 a.m., after which she went to Kylie's house.

[4] Testimony from a nurse who examined Amanda indicated Kylie called the police.

[5] Kylie also told the nurse who examined Amanda that Amanda's pants were pulled down to her ankles and her legs were straight up in the air, and Renteria had his pants down and was up against Amanda's buttocks/legs.

The morning of the alleged assault, Amanda was taken to Texas Children's Hospital, where she was examined by Tuesday Sowers, a Sexual Assault Nurse Examiner ("SANE"). According to the SANE report, Amanda told Sowers that Renteria abused her more than once, but she could not recall the first time it happened or how many times it occurred. When asked if she knew why she was there, Amanda told Sowers, "because that's what is wrong" and then pointing at her vagina, she added, "[m]y dad put his thing there." When asked what she meant by "his thing," Amanda pointed at her vagina and said, "'He put it in the little—he put it a little inside. It hurt a little bit but not too much." Amanda added that Renteria told her that "if I didn't scream or tell anyone he would buy me a Happy Meal.'"

Claudia Reyes Hauser, who worked for the Children's Assessment Center, interviewed Amanda on the day of the alleged assault. She testified that Amanda told her that Renteria abused her "multiple times." Amanda gave her "specific details about one event" and "limited details about the other events." She told Hauser that Renteria told her prior to July 26, 2022 "that he wouldn't do this anymore." Amanda told Hauser that Renteria first sexually assaulted her when she was seven years old, and then it happened when she was eight years old, and then the most recent incident.[6] According to Hauser, Amanda also stated that "he kept

---

[6]     Amanda later stated it did not happen when she was eight.

doing it again and again and again," implying that more than one incident had taken place.

After both sides rested and gave their closing arguments, a twelve-member jury deliberated for about ten hours before returning a guilty verdict. After learning that one of the alternate jurors had participated in the deliberations by mistake, the trial court ordered that the alternate be released and the correct juror, who should have deliberated, rejoin the jury so that the jury could deliberate guilt or innocence anew. The jury deliberated approximately thirty-five minutes before returning a guilty verdict. The same jury then deliberated with respect to punishment, imposing a thirty-year prison sentence.

This appeal ensued.

## Ineffective Assistance of Counsel

Prior to trial, the State filed a notice of its intent to use Amanda's hearsay statements pursuant to Article 38.072 of the Code of Criminal Procedure. The trial court conducted an Article 38.072 hearing at which Sears and Hauser testified. At the conclusion of the hearing, the trial court held, over defense counsel's objection, that Sears could testify as an outcry witness for the alleged abuse on July 26, 2022, and Hauser could testify as an outcry witness for the alleged abuse that occurred on or about April 6, 2021.

In his first issue, Renteria argues that his trial counsel rendered ineffective assistance because he failed to object to the trial testimony of the two designated outcry witnesses after it became apparent they were the wrong outcry witnesses. He argues that "there can be no possible strategic reason to fight against an outcry witness' testimony in the pretrial outcry hearing and then fail to object to the *same witness'* outcry testimony when new and pertinent grounds have appeared." (Emphasis in original.)

The United States Constitution and the Texas Constitution guarantee individuals the right to assistance of counsel in a criminal prosecution. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. This right to counsel is more than the mere presence of a lawyer; it is a right to effective assistance. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012) ("[The] Sixth Amendment right to counsel preserves the fairness, consistency, and reliability of criminal proceedings by ensuring that the process is an adversarial one."). Effective assistance is not "errorless counsel," but rather "objectively reasonable representation." *Lopez*, 343 S.W.3d at 142.

## A.    Standard of Review

We evaluate claims that counsel was constitutionally ineffective under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and adopted by Texas in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App.

1986). Under *Strickland*, the appellant must show that (1) counsel's performance "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694; *Lopez*, 343 S.W.3d at 142. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The appellant must establish both *Strickland* prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Whether an appellant received ineffective assistance of counsel turns on the facts of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). When conducting a *Strickland* analysis, we look at the "totality of the representation and the particular circumstance of each case" to determine counsel's effectiveness. *Id.* (citing *Ex Parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)). There is a "strong presumption that counsel's performance fell within the wide range of reasonable professional assistance." *Lopez*, 343 S.W.3d at 142 (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). To overcome the presumption, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged

7

ineffectiveness." *Thompson*, 9 S.W.3d at 814. The reviewing court may not engage in "retrospective speculation." *Lopez*, 343 S.W.3d at 142 (citing *Thompson*, 9 S.W.3d at 813). Any judicial review must be "highly deferential" to trial counsel and avoid the "distorting effects of hindsight." *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (citing *Strickland*, 466 U.S. at 669).

Relevant to this case, "[t]he failure to object to proper questions and admissible testimony . . . is not ineffective assistance." *Poor v. State*, 715 S.W.3d 15, 41 (Tex. App.—Eastland 2024, pet. ref'd) (quoting *Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012)). A party who alleges ineffective assistance of counsel based on his counsel's failure to object must establish "that the trial court would have erred in overruling an objection had trial counsel made one." *Id.* (citing *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011)); *see also Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017) ("The failure to object will not support a claim of ineffective assistance unless the trial judge would have erred in overruling the objection.").

The Court of Criminal Appeals repeatedly has stated that trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). In the absence of such an explanation, "an appellate court should not find

8

deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed*, 187 S.W.3d at 390 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

## B.    Outcry Witnesses

When a defendant is charged with certain offenses against a child under the age of fourteen, Article 38.072 of the Code of Criminal Procedure "allows into evidence the complainant's out-of-court statement so long as that statement is a description of the offense and is offered into evidence by the first adult the complainant told of the offense." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). "Though the terms do not appear in the statute, the victim's out-of-court statement is commonly known as an 'outcry,' and an adult who testifies about the outcry is commonly known as an 'outcry witness.'" *Id.* The trial court must hold an Article 38.072 hearing outside the presence of the jury to determine "based on the time, content, and circumstances of the statement" whether the victim's out-of-court statement is reliable, and thus admissible. *Id.* at 484–85 (citing TEX. CODE CRIM. PROC. art. 38.072 § 2(b)(2)).[7] A trial court's designation

---

[7]    *See Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) ("In order to invoke the statutory exception [to hearsay from an outcry witness], the party intending to offer the statement must notify the adverse party of the names of the outcry witnesses and a summary of their testimonies, the trial court must conduct a reliability hearing of the witnesses outside the presence of the jury, and the child victim must testify or be available to testify at the proceeding." (citing TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(1)(A–C))).

of an outcry witness is reviewed for abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).[8]

During the Article 38.072 hearing, the trial court designated Sears as the outcry witness for the sexual assault that allegedly occurred on July 26, 2022, and Hauser as the outcry witness for the sexual assault that allegedly occurred on April 6, 2021.[9] Renteria's trial counsel objected to both designations during the outcry hearing. In objecting to Sears as the outcry witness for the July 26 assault, Renteria's trial counsel did not articulate any specific reason for the objection, other than to state that Sears' statements were hearsay because the State had not established that an outcry had occurred under Article 38.072. In objecting to Hauser as the outcry witness for the prior assault(s), Renteria's trial counsel complained of the "lack of reliability" and "lack of detail" as to "what had happened on any other particular occasion." He argued that to the extent there should be an outcry witness for prior acts, it should be Sears.

## C.    Analysis

Renteria does not complain on appeal about the trial court's designation of the outcry witnesses during the outcry hearing. Rather, he argues that during the

---

[8]    There may be only one outcry witness for any given event. *Id.* (citing *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd)).

[9]    The amended indictment states that the sexual assaults occurred from April 6, 2021 through July 26, 2022. Hauser served as the outcry witness for the multiple sexual assaults that allegedly occurred prior to July 26, 2022.

trial, "it became clear" that the trial court "had designated the wrong witnesses in both instances," but his trial counsel failed to object to the outcry testimony. Renteria argues that "there can be no possible strategic reason to fight against an outcry witness' testimony in the pretrial outcry hearing and then fail to object to the *same witness*' outcry testimony when new and pertinent grounds have appeared." (Emphasis in original.)

"To defeat the presumption of reasonable professional assistance, 'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Vega v. State*, 610 S.W.3d 79, 82 (Tex. App.—San Antonio 2020, no pet.) (quoting *Thompson*, 9 S.W.3d at 814). Renteria's trial counsel did not file a motion for new trial or otherwise explain the reason he did not object during the outcry testimony at trial. When as here, trial counsel does not explain his actions, such as in a motion for new trial, we will not find that his performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed*, 187 S.W.3d at 392). The record here does not rise to such a finding.

*Lopez* is instructive. In that case, Lopez argued that his trial counsel rendered ineffective assistance because he had not objected to certain outcry

11

witness testimony. Noting the record was silent as to why counsel had not objected, the Court of Criminal Appeals stated:

> The record could have been supplemented through a hearing on a motion for new trial, but appellant did not produce additional information about trial counsel's reasons for allowing all three outcry witnesses to give similar testimony about the same events or for allowing opinion testimony about the credibility of the complainant, both without objection. Appellant has thus failed to meet his burden under the first prong of *Strickland*[.]

343 S.W.3d at 144. Because the record in the present case is silent about trial counsel's reasons for not objecting to the testimony of the two outcry witnesses during trial, Renteria has not rebutted the presumption that his trial counsel's actions were "in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Nova v. State*, No. 14-18-01105-CR, 2020 WL 897070, at *3 (Tex. App.—Houston [14th Dist.] Feb. 25, 2020, no pet.) (mem. op., not designated for publication) ("Appellant's trial counsel did not move for new trial, and appellant raises ineffective assistance of counsel for the first time on appeal. So, the trial record stands silent as to counsel's trial strategy for not objecting to [the outcry witness'] testimony.").[10]

---

[10]     *Nova v. State* stemmed from a claim of ineffective assistance of counsel "due to the failure of defense counsel to object to the State's introduction of multiple outcry witnesses and improper hearsay testimony." No. 14-18-01105-CR, 2020 WL 897070, at *2 (Tex. App.—Houston [14th Dist.] Feb. 25, 2020, no pet.) (mem. op., not designated for publication).

Renteria also did not establish "that the trial court would have erred in overruling an objection had [his] trial counsel made one." *See Poor*, 715 S.W.3d at 41 (citing *Ex parte Martinez*, 330 S.W.3d at 901) (alleging ineffective assistance based on failure to object to designation of outcry witnesses); *see also Byars v. State*, No. 14-06-01043-CR, 2008 WL 1991737, at *5 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. ref'd) (mem. op., not designated for publication) (holding in response to ineffective-assistance argument that testimony regarding sexual abuse should have elicited objection, "[t]o show counsel was ineffective for failing to lodge a hearsay objection, appellant must show that the trial court would have erred in overruling such an objection" (citing *Vaughn v. State,* 931 S.W.2d 564, 566 (Tex. Crim. App. 1996))).

Renteria argues that Lisa, rather than Sears, should have been the outcry witness for the alleged assault on July 26. The State responds that even if Sears was not a proper outcry witness with respect to the July 26 assault, any objection to her testimony based on hearsay would have failed because her testimony was admissible under Texas Rule of Evidence 803(4), which provides an exception to the hearsay rule for statements made for medical diagnosis or treatment. *See* TEX. R. EVID. 803(4). We agree.

A hearsay statement satisfies the Rule 803(4) exception if the statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment;

13

and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." *Id.* According to her testimony during the outcry hearing, Sears was a paramedic on the ambulance that was called to Amanda's house on July 26, 2022. She talked with Amanda and asked her where her pain was. Sears documented in her EMS records that Amanda complained of vaginal pain.[11] Sears' testimony was thus admissible under Rule 803(4), and the trial court would not have erred in overruling Renteria's trial counsel's objection to her testimony had he made one. *See Lane v. State*, 111 S.W.3d 203, 204 (Tex. App.—Eastland 2003), *aff'd on other grounds*, 151 S.W.3d 188 (Tex. Crim. App. 2004) (holding that statements to paramedic on night of offense were admissible under Rule 803(4) "because they were pertinent to the diagnosis and treatment" of patient);[12] *Moyer v. State,* 948 S.W.2d 525, 528 (Tex. App.—Fort Worth 1997, pet. ref'd) (admitting paramedic's statement under business record exception but recognizing that statement may also be admissible hearsay under Rule 803(4)); *see also McCray v. State*, No. 10-02-252-CR, 2004 WL 224582, at *3 (Tex. App.—Waco Feb. 4, 2004, no pet.) (mem. op., not designated for publication) (holding

---

[11] Sears testified during trial that in her role as a paramedic, she performs an initial assessment, asking the patient if she is in pain, where the pain is, and determining what the treatment will be and if the patient will be taken to a hospital.

[12] The court in *Lane* also held the statements were admissible as excited utterances. *Lane v. State*, 111 S.W.3d 203, 211 (Tex. App.—Eastland 2003), *aff'd on other grounds*, 151 S.W.3d 188 (Tex. Crim. App. 2004). Lane did not challenge the Rule 803(4) determination in the Court of Criminal Appeals. *Id.* at 191.

paramedic's testimony regarding adult's assault "fits within the exception to the hearsay rule for statements made for purposes of medical diagnosis and treatment); *Loya v. State*, No. 08-12-00315-CR, 2014 WL 4536546, at *6 (Tex. App.—El Paso Sept. 12, 2014, no pet.) (mem. op., not designated for publication) (noting "primary purpose" of complainant's statements to EMT "was to allow [the] EMT [] to evaluate the complainant, formulate a diagnosis, and provide care" and holding trial court properly admitted EMT's testimony and medical records about complainant's statement regarding assault under Rule 803(4)).[13]

Renteria also argues that Sowers should have been designated as an outcry witness for the alleged previous assaults and that trial counsel's failure to point that out was "not only unreasonable, but also exceptionally harmful." He argues that had Hauser's testimony about the prior assaults been excluded as hearsay, there would have been no evidence of the alleged prior assaults "except for Nurse Sowers' testimony supporting that this was a 'continuous' sexual abuse of a child, and that evidence would have been insufficient to support a conviction" because the statement Amanda made to Sowers "did not put a timeline on them."

---

[13] *See also State v. Sanchez*, 722 S.W.3d 58, 71 (Tex. App.—Fort Worth 2025, pet. ref'd) (holding that SANE nurse's testimony regarding sexual assault of child was admissible hearsay under Rule 803(4)).

The State argues that Amanda's statement to Sowers "was a mere allusion"[14] to the earlier assault(s), as Amanda only told Sowers that Renteria "put his thing here" and gestured toward her vagina, whereas Amanda told Hauser that Renteria "put his penis inside of her vagina area" multiple times, including when she was seven and eight years old. Amanda's statement to Sowers did not include the specific temporal element that tied the assault to a date more than thirty days before the July 26, 2022 assault, as required to obtain a conviction for continuous sexual assault. *See* TEX. PENAL CODE § 21.02(b).[15] The State notes that Amanda's statement to Sowers "could have been referring to past sexual assaults occurring fewer than 30 days prior to July 26th." We tend to agree.

Considering the lack of record explaining Renteria's trial counsel's decisions, we cannot conclude that Renteria's trial counsel rendered ineffective assistance. Moreover, assuming without deciding that Sears was not the proper outcry witness for the July 26 episode, we find her testimony was admissible as a hearsay exception under Rule 803(4). And we conclude that Hauser was the correct

---

[14] *See Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (noting that child's statement to outcry witness "must be more than words which give a general allusion that something in the area of child abuse was going on").

[15] Under Section 21.02(b) of the Texas Penal Code, one commits "continuous sexual abuse of a young child" if someone who is seventeen or older "commits two or more acts of sexual abuse" during "a period that is 30 or more days in duration" and the victim is younger than fourteen years old. TEX. PENAL CODE § 21.02(b).

outcry witness for the previous assaults, given that she was the only witness to which Amanda related temporal information regarding the assaults.

We overrule Renteria's first issue.

## Jury Deliberations

A jury of twelve members—including an alternate juror—deliberated during the guilt innocence phase of trial. In his second issue, Renteria argues the trial court committed constitutional error by denying his motion for mistrial after it discovered that the alternate juror had deliberated with the jury in error and further by allowing the panel to deliberate anew with the correct juror.

After the close of evidence, twelve individuals—who apparently believed they were the seated jury—deliberated for approximately ten hours before returning a guilty verdict. While polling the jury,[16] the parties and the trial court discovered that one of the individuals who had deliberated with the jury was an alternate who believed she was an actual juror. Renteria moved for a mistrial, which the trial court denied.

The trial court initially intended for the same twelve individuals—the eleven actual jurors and the alternate—to decide punishment. The trial court judge stated that the seated jury and the alternate had "heard all the testimony. All the [jurors] that deliberated heard every bit of testimony. And therefore, it is the

---

[16] After the guilty verdict was read, Renteria requested that the jury be polled.

Court's opinion that they were valid jurors to decide the guilt/innocence and they will be the same jurors that will hear and decide punishment in this case."

Rather than having the same twelve-member jury decide punishment, the State recommended that the alternate juror be dismissed and Juror 29—the actual juror who should have (but had not) deliberated during the guilt-innocence phase—be sent to the jury room with the other eleven seated jurors to deliberate anew. The State suggested that the trial court could instruct the jury to disregard their prior verdict and deliberations and start their deliberations anew with Juror 29. The trial court granted the State's request stating:

> I will order [the jury] to disregard their previous verdict and disregard all previous deliberation and order them to restart their deliberations. That includes reselecting who their foreman will be. It may be the same foreman, may be a different foreman. That will be their selection. And I will order those jurors to go back and deliberate.[17]

The defense objected, stating:

> [T]he jury that came back with a verdict—the 12 jurors who came back with the verdict today had deliberated for quite some time. They sent questions that indicated that there was a lot of very serious and maybe in minutia discussions about the facts and—which ultimately led to their verdict.
>
> The jury that came out and gave that verdict was unanimous. 11 people will go back into that jury room with a new person with the pressure of, I believe, that the 11 people who deliberated first have already discussed the facts. They've already convinced each other one way or another, potentially. They've had all of the discussion that— that was obviously had during their deliberation with a different

---

[17] The alternate who mistakenly deliberated was dismissed.

person who now will probably feel under the pressure to go along with the verdict they've already reached. Who won't have had the benefit of the discussion they had when all of these people made up their mind.

And even though they're told that they're to start that conversation over, it's probable that those 11 people will not change their minds. That Juror No. 29 won't add anything that could convince them at this point—especially given the passage of time and the amount of time that they've been here—to have a totally open-minded full discussion that was probably had when they started with the wrong juror.

And for that—that reason, we don't feel like that deliberation would be fair to Mr. Renteria or render a fair verdict when—if and when they were to come back.

The trial court judge responded that he believed the instruction to the jury to "disregard their previous deliberations and to restart [would] be followed." He further stated he would do "his best to emphasize the importance of that and that no juror [was] to be pressured in any way." The judge then ordered the twelve actual jurors to deliberate again:

At this time I'm ordering you, that you are to disregard your previous verdict. You'll return with the correct jury . . . You'll restart your deliberations from the beginning.

No juror is to be pressured because there may have been some other deliberations. You are to put aside those deliberations and restart. That means that when the 12 of you get into the jury room, you will reselect a foreman. That may be the same foreman. It may be a different foreman. That will be up to you. And then with the correct 12 jurors, you will restart your deliberations.

The jury returned approximately thirty-five minutes later with a guilty verdict. Renteria re-urged his motion for a mistrial, arguing that given the short

19

time it had taken the jury to reach its verdict, they "couldn't have [deliberated] in the same detail [they had done] prior to the first verdict." The trial court denied the motion for mistrial.

## A.   Standard of Review

We review the trial court's denial of a motion for mistrial for abuse of discretion. *Balderas v. State*, 517 S.W.3d 756, 783 (Tex. Crim. App. 2016); *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We will uphold a trial court's denial of a motion for mistrial "if it [is] within the zone of reasonable disagreement." *McDonnell v. State*, 674 S.W.3d 694, 699 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (citing *Archie*, 221 S.W.3d at 699).

In considering whether a trial court abused its discretion in denying a motion for mistrial, we consider: "(1) the severity of the misconduct (including its prejudicial effect), (2) the effectiveness of the curative measures taken, and (3) the certainty of the conviction or punishment assessed absent the misconduct." *McDonnell*, 674 S.W.3d at 699 (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). We will reverse only if "no reasonable view of the record could support the trial court's ruling." *Id.* (citing *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012)).

**B.** ***Becerra v. State* guides our analysis in evaluating Renteria's challenge to the trial court's denial of his motion for mistrial.**

The parties have not directed us to, and we have not located, any authority that addresses these exact circumstances, where an alternate juror deliberated instead of an actual juror, and then, when the mistake was discovered, the twelve seated jury members deliberated anew, discarding the first verdict. The State points us to *Becerra v. State*, where an alternate juror joined the twelve-person panel of regular jurors during deliberations, unbeknownst to counsel or the trial court. 685 S.W.3d 120, 122 (Tex. Crim. App. 2024). Forty-six minutes after the jury retired to deliberate, the State realized there were thirteen people in the jury room. *Id.* at 123. The trial court removed the alternate juror and held a hearing, concluding that Becerra "may have waived any error by failing to object when the alternate retired to the jury room with the jury." *Id.* At the State's request, the jury was instructed to disregard anything said by the alternate juror and to resume deliberations. *Id.* at 124. The parties agreed "in substance" to the proposed instruction given to the jurors but Becerra moved for a mistrial based on the alternate's presence. *Id.* The court denied Becerra's motion for a mistrial and the jury resumed deliberations, ultimately returning a verdict of guilty. *Id.*

Becerra filed a motion for new trial, arguing that his constitutional right to a twelve-person jury had been violated by the alternate's participation in deliberations and in a preliminary vote the jury had conducted with respect to his

guilt. *Id.* Becerra also argued that the alternate's participation violated Articles 33.01 and 33.011 of the Code of Criminal Procedure,[18] and that the alternate juror's presence in the jury room and participation in the preliminary vote violated Article 36.22 of the Code of Criminal Procedure. *Becerra*, 685 S.W.3d at 124. Article 36.22 provides:

> No person shall be permitted to be with a jury while it is deliberating.
> No person shall be permitted to converse with a juror about the case
> on trial except in the presence and by the permission of the court.

TEX. CODE CRIM. PRO. art. 36.22. Becerra argued that "an established violation of Article 36.22 shifted the burden to the State to show lack of harm." *Becerra*, 685 S.W.3d at 124. The trial court denied the motion for new trial, concluding that Becerra had waived any complaints about the alternate juror and in any event, any error was harmless. *Id.* at 125.

Becerra appealed and the court of appeals held that his constitutional claims and statutory claims were not preserved because he had not objected or moved for a mistrial when the alternate retired to deliberate with the jury. *Id.* The Court of Criminal Appeals granted review and concluded that Becerra had preserved his constitutional and statutory claims for review because he objected as soon as he became aware of the error. *Id.* The court reversed and remanded for the court of

---

[18] Article 33.01 provides that district court juries trying felonies "shall consist of twelve qualified jurors." TEX. CODE CRIM. PRO. art. 33.01. Article 33.011 governs the selection of alternate jurors. TEX. CODE CRIM. PRO. art. 33.011.

22

appeals to consider the merits of Becerra's complaints. *Id.* On remand, the court of appeals held the trial court had not abused its discretion by denying the request for mistrial or motion for new trial. *Id.* The court held that "neither the alternate juror's presence nor his initial participation in voting was sufficient to create a reasonable probability that the alternate juror's outside influence had a prejudicial effect." *Id.* at 126. Becerra sought review again in the Court of Criminal Appeals.

The Court of Criminal Appeals held that (1) no constitutional or statutory violation of the twelve-person jury rule occurred when the alternate participated in deliberations, but (2) the alternate's participation violated both provisions of Article 36.22—the first, which precludes anyone other than a juror from being with a jury while it is deliberating, and the second, which precludes a non-juror from "conversing with a juror about the case on trial except in the presence and by permission of the court." *Id.* at 134. The court noted that an alternate juror only becomes a member of the jury upon replacing a "regular" juror. *Id.* Finally, the court held that "casting a harm analysis in terms of a rebuttable presumption of harm is unnecessary" because "the inquiry ultimately focuses on whether the alternate juror's intrusion into jury deliberations affected those deliberations and thereby the verdict." *Id.* at 138. The court concluded:

> An established violation of Article 36.22 should be reviewed for harm by the appellate court based upon a review of the record to determine whether the error had a substantial and injurious effect in determining the jury's verdict. Neither party bears a burden because it is the duty

23

of the courts to determine whether the record as a whole shows the outcome of the proceeding was influenced by the error.

*Id.* at 139. The court held that "the appropriate standard for evaluating harm when an alternate juror participates in jury deliberations in violation of Article 36.22 is the standard for non-constitutional error found in Rule 44.2(b)." *Id.* at 141. The court remanded the case to the court of appeals to analyze "whether this non-constitutional error affected [Becerra's] substantial rights." *Id.* at 147.[19]

We agree with the State that *Becerra* guides our analysis. Applying the principles articulated in *Becerra*, we conclude that the trial court did not abuse its discretion in denying Renteria's motion for mistrial.

## C. The trial court did not abuse its discretion in denying Renteria's motion for mistrial.

Renteria argues that "the jury's entire initial decision-making process was flawed because it excluded a juror and included an outside influence." The parties agree that the alternate juror's participation in the first deliberation violated Article 36.22 because her participation allowed someone other than an actual juror "to converse with a[n actual] juror about the case on trial[.]" TEX. CODE CRIM. PRO. art. 36.22. *Becerra* instructs that a violation of Article 36.22 is reviewed for harm under Rule 44.2(b) of the Rules of Appellate Procedure, which provides that non-

---

[19] During the second remand, the court of appeals held the error did not have a "substantial or injurious effect" on the jury's verdict. *Becerra v. State*, No. 10-17-00143-CR, 2025 WL 415460, at *3 (Tex. App.—Waco Feb. 6, 2025, pet. ref'd) (mem. op., not designated for publication).

24

constitutional harm that "does not affect substantial rights must be disregarded."

TEX. R. APP. P. 44.2(b).[20]

Renteria argues that once the second deliberation began, Juror 29—the actual twelfth juror—was clearly substantially influenced. He argues:

> The first major indication of that is the vast difference in deliberation times. Though the record is silent as to whether [Juror 29] knew of the previous guilty verdict, it seems extremely likely that she did, and even if she didn't before she went into the deliberation room, it seems impossible that no one told her that the previous outcome had been a guilty verdict. The jury were not engaging in fresh discussions, they were ratifying their prior decision. This Court can assume that there was significant pressure on the formerly excluded juror to hurry up and vote with the majority.

The only non-speculative portion of Renteria's argument involves the length of the jury's deliberations. According to Renteria, while the first deliberation lasted "a bit over 10 hours," the second deliberation lasted thirty-five minutes.[21, 22] He argued in seeking a mistrial that the radically diminished deliberation time "says the same type of in-depth conversation was not held given that one, [the jury] had to decide

---

[20]  We decline Appellant's invitation to stray from *Becerra* and impose a constitutional harm analysis, which carries with it a presumption of harm.

[21]  Renteria's counsel argued in seeking a mistrial that the first deliberation took eight hours and the second deliberation took twenty-eight minutes.

[22]  The clerk's record reflects four questions from the jury during deliberations. It is not definitively clear whether all four questions were asked during the first deliberation, but according to Renteria, the first deliberations had "a lot of questions, read backs, et cetera," and a review of the clerk's record shows the questions were numbered (1) through (4).

on a foreperson and then have a conversation that was clearly—couldn't have been had in the same detail that they did prior to the first verdict."

The crux of Renteria's argument is that the second deliberation lasted only thirty-five minutes while the original deliberation lasted about ten hours. Neither party has directed us to authority that contemplates the length of deliberation when a jury is instructed to begin its deliberations anew, and we have not found any. The only case we have located that mentions the time a jury spent deliberating is *Gonzalez v. State*, 616 S.W.3d 585 (Tex. Crim. App. 2020). In that case, a jury returned a guilty verdict in a capital murder case, but during their deliberations on punishment, a juror became ill and was replaced with an alternate. *Id.* at 589. The jury that included the alternate did not re-deliberate the guilt-innocence phase. The jurors including the alternate decided the appellant's punishment after several hours of deliberation.[23] Gonzalez argued on appeal that the trial court had violated the Sixth Amendment by denying his request "to instruct the jury to deliberate [guilt-innocence] anew" and by telling the parties that the original jury's verdict should "remain." *Id.* at 592. The Court of Criminal Appeals held that "any error in failing to instruct a jury to deliberate anew [was] not structural," and that reversal required a finding of harm. *Id.* at 593. The court stated:

---

[23] The time punishment deliberations began is not given, but the opinion infers the jurors deliberated beginning at some time in the morning and ending at approximately 5 p.m. *Gonzalez v. State*, 616 S.W.3d 585, 591 (Tex. Crim. App. 2020).

Post-substitution deliberations here lasted until almost 5:00 p.m., undermining any claim that the alternate may have been pressured into passively ratifying positions that the original jury may have already reached. . . . Such a claim is further undermined by the post-verdict polling. In response to the poll, each juror confirmed that the answers were his own, alleviating "any concerns that the alternate juror might have simply acquiesced in a predetermined verdict as a result of coercion, unease, or incomplete deliberation." *See State v. Dalton*, 241 Ariz. 182, 385 P.3d 412, 418 (2016) (stating that the jury poll used by the trial court was a "procedural safeguard [that] lessened possible prejudice from the lack of a deliberate-anew instruction"). Consequently, any error from the juror substitution procedure was harmless.

*Id.* at 594 (internal citations omitted).

In the present case, the jury was polled after they redeliberated guilt, and each juror averred a vote of guilty. Thus, as in *Gonzalez*, the poll alleviated "any concerns" that Juror 29 "might have simply acquiesced in a predetermined verdict as a result of coercion, unease, or incomplete deliberation." *Id.*; *see also Coleman v. State*, No. 05-15-01126-CR, 2016 WL 3145985, at *1 (Tex. App.—Dallas June 2, 2016, no pet.) (mem. op., not designated for publication) ("The purpose of the jury poll is to ensure the unanimity of the jury verdict by establishing that each juror agrees with the verdict as announced." (citing *Ex parte Aviles*, 78 S.W.3d 677, 683 (Tex. App.—Austin 2002, no pet.))); *see also Mendoza v. State*, 442 S.W.2d 690, 691 n.1 (Tex. Crim. App. 1969) ("The only purpose for polling the

jury is to ascertain from each juror individually if the verdict returned was his." (citation omitted)).[24]

Moreover, unlike in *Gonzales*, the trial court in the present case instructed the parties to start their deliberations anew:

> At this time I'm ordering you, that you are to disregard your previous verdict. You'll return with the correct jury . . . You'll restart your deliberations from the beginning.
>
> No juror is to be pressured because there may have been some other deliberations. You are to put aside those deliberations and restart. That means that when the 12 of you get into the jury room, you will reselect a foreman. That may be the same foreman. It may be a different foreman. That will be up to you. And then with the correct 12 jurors, you will restart your deliberations.

"An instruction to deliberate anew can operate as a valuable procedural safeguard to ensure that a re-formed jury deliberates with the new member." *Gonzalez*, 616 S.W.3d at 593 (citing cases). And Texas jurisprudence teaches that it is presumed, unless shown otherwise, that a jury follows the trial court's instructions. *See Colburn v. State,* 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) ("We generally presume the jury follows the trial court's instructions in the manner presented.") (citing cases); *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011) ("The law generally presumes that instructions to disregard and other cautionary

---

[24] "Polling the jury enable[s] the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented." *Miranda v. United States*, 255 F.2d 9, 17 (1st Cir. 1958) (citing cases).

instructions will be duly obeyed by the jury." (citing *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987))).[25]

We are also mindful of caselaw that contemplates a scenario where a juror is dismissed during deliberations, an alternate is seated, and the jury begins deliberating as if it had not done so before. *See, e.g.*, *Hill v. State*, 475 S.W.3d 407, 409 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (holding no harm when trial court sua sponte dismissed juror and seated alternate during deliberations, ordering jury to begin deliberations anew).[26] The Court of Criminal Appeals held in *Hill*:

> Even though it was error to dismiss the original juror, the jury was composed of 12 properly selected members. The alternate juror was subjected to the same selection process, was properly sworn, and heard all of the evidence. The court admonished the jury, upon the seating of the alternate, to "start over with your deliberations . . . to the point where it is necessary to bring [alternate] up to speed where she can make a clear and informed vote and decision in this case."

*Id.* The court held the record did not "reflect any taint from the alternate juror" and no harm was evident from the record, so the court's error "did not affect

---

[25] *See also Wappler v. State*, 183 S.W.3d 765, 780 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("[W]e 'generally presume the jury follows the trial court's instructions in the manner presented,' unless that presumption is rebutted by evidence showing that the jury did not follow the jury instruction presented." (quoting *Colburn v. State,* 966 S.W.2d 511, 520 (Tex. Crim. App. 1998))).

[26] The juror in *Hill* was dismissed because she was not a county resident, but the court of appeals held the trial court erred in doing so because such qualification could be waived and neither the defense nor the State had objected to the juror's continued service. *Hill v. State*, 475 S.W.3d 407, 408 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

appellant's substantial rights."[27] *Id.* "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). A substantial right is not affected if the reviewing court has "a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect[.]" *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

Here, there is no showing that a substantial right was affected by the trial court's decision to allow the jury to start deliberations anew with Juror 29. Juror 29

---

[27] We note that had the trial court followed its first inclination to have the eleven jurors and alternate deliberate on punishment, rather than ordering new deliberations on guilt-innocence, caselaw would have supported that decision. Indeed, we have found several cases in which alternate jurors mistakenly participated in deliberations instead of actual jurors. For example, in *McCumber v. State*, after the jury began to deliberate, the trial court learned the bailiff "had inadvertently excused two regular jurors who he mistakenly believed were alternates, and thereafter the two who began the trial as alternates deliberated with the other ten jurors." 714 S.W.3d 159, 163 (Tex. App.—Beaumont 2024, no pet.). The court held any error was harmless because when the alternate jurors replaced the two actual jurors, the alternate jurors "can be said to [have become] member[s] of the regular jury." *Id.* at 164 (citing *Becerra v. State*, 685 S.W.3d 120, 132 (Tex. Crim. App. 2024)); *see also Ponce v. State*, 68 S.W.3d 718, 721–22 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding no harm occurred when alternate juror had mistakenly deliberated instead of chosen juror, stating, "[s]ince the trial court in this case placed the alternate on the jury before the jury retired, the alternate did not lose his ability to exercise the same functions and powers as any other juror"); *Salazar v. State*, 728 S.W.3d 302, 309 (Tex. App.—Corpus Christi–Edinburg 2025, pet. filed) (holding no harm even though "mix-up" enabled two alternates to deliberate instead of two actual jurors in violation of Article 33.011 of Code of Criminal Procedure). In none of these cases was the jury instructed to re-deliberate with the actual juror(s) who mistakenly failed to participate in the deliberation.

and the alternate who deliberated heard the same evidence as the remaining seated jurors. After the alternate juror was released and Juror 29 substituted in her place, the trial court instructed the jury to disregard their previous deliberations and to begin their deliberations anew, and it is presumed that the jurors did just that. Renteria's argument on appeal that Juror 29 was pressured into ratifying the previous guilty verdict is entirely speculative.[28]

We cannot indulge in speculation in determining whether an error caused a defendant harm. *See Casias v. State*, 36 S.W.3d 897, 900 (Tex. App.—Austin 2001, no pet.) (stating appellate court would not "indulge in [] speculation" in determining whether juror's short separation from rest of jury during deliberations affected appellant's substantial rights); *see also Byrd v. State*, 192 S.W.3d 69, 72

---

[28] It is unclear whether Renteria is arguing that jury misconduct occurred, but if he is, there is no evidence other than his speculation to support such an allegation. *See State v Gallien*, 631 S.W.3d 885, 896 (Tex. App.—Houston [1sh Dist.] 2021, pet. ref'd) (concluding after juror sent note to judge indicating she "felt pressured by the other jurors" and that she "changed her vote to guilty based on her fear of being bullied" that jury misconduct had not occurred, as such allegations "can suggest the normal dynamic of jury deliberations, with the intense pressure often required to reach a unanimous decision" (citing *United States v. Cuthel*, 903 F.2d 1381, 1383 (11th Cir. 1990))). This Court noted in *Gallien* that the jurors had been polled, during which the juror who wrote the note affirmed the guilty verdict was her individual verdict. *Id.*

Further, "[p]ersonal pressures felt by jurors to wrap up the deliberations do not constitute outside influences" as that term is discussed in Texas Rule of Evidence 606(b)(2)(A). *See Zabihian v. Hyundai Motor Am.*, No. 13-20-00067-CV, 2021 WL 3919217, at *10 (Tex. App.—Corpus Christi–Edinburg Sept. 2, 2021, no pet.) (mem. op.) (citing *Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 325 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied)); TEX. R. EVID. 606(2)(A).

(Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("We presume this jury followed the trial judge's instructions . . . . Absent any evidence on the issue, we will not engage in raw speculation regarding the conduct of the jurors."); *Balderas v. State*, 517 S.W.3d 756, 791 (Tex. Crim. App. 2016) (holding record did not support appellant's "speculation that, as the result of fears generated by an outside influence, jurors abandoned their views in order to reach a verdict quickly"); *Hegar v. State*, 11 S.W.3d 290, 295 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding error was harmless when juror was replaced with alternate rather than giving appellant opportunity to proceed with eleven jurors; appellant's argument regarding "possibility that the added juror might have been tainted by his contact with others" was speculative and appellant did not question added juror regarding "what happened between the time he was released from, and reported back for, duty").

On this record, we cannot conclude that the trial court's decision allowing a second deliberation affected Renteria's substantial rights.

We overrule Renteria's second issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Publish. TEX. R. APP. P. 47.2(b).